UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:15-CV-00295-JHM

ROBERT RAY REED                                                    PLAINTIFF

V.

GULF COAST ENTERPRISES,
THE GINN GROUP, INC.,
SOURCEAMERICA, INC., and
GARY MATTHEWS                                                     DEFENDANTS

MEMORANDUM OPINION & ORDER

This matter is before the Court on a motion by Defendant SourceAmerica, Inc.

("SourceAmerica") for judgment on the pleadings pursuant to Federal Rule of Civil Procedure

12(c), or for summary judgment pursuant to Rule 56, with respect to all claims asserted against it

by Plaintiff Robert Ray Reed ("Reed") [DN 9]. Fully briefed, this matter is ripe for decision.

For the following reasons, the Motion is **GRANTED**.

I.      BACKGROUND

This case arises out of Reed's employment with and subsequent termination from

Defendant Gulf Coast Enterprises ("GCE"). According to the Complaint, from November 2010

to November 2012, Reed, who is disabled, was employed by Defendant GCE through the

AbilityOne Program, a government-contracting program. (See Compl. [DN 1-2] ¶¶ 2–3, 17–18,

37.) On March 16, 2015, Reed, a resident of Kentucky, filed a complaint in state court against

GCE, The Ginn Group, Inc. ("Ginn Group"), SourceAmerica, and Gary Matthews ("Matthews"),

an employee of GCE. Reed asserted claims for (1) disability discrimination in violation of the

Kentucky Civil Rights Act ("KCRA") under KRS 344.040; (2) negligent

hire/retention/supervision; (3) promissory estoppel; (4) failure to protect; (5) civil conspiracy; (6)

civil conspiracy (retaliation); in violation of KRS 344.280; (7) retaliation (EEOC), in violation of KRS 344.280; and (8) negligent infliction of emotional distress.

On April 20, 2015, Defendants SourceAmerica, GCE, and Ginn Group (collectively, the "Removing Defendants") removed the case from state court to this Court based on diversity jurisdiction under 28 U.S.C. § 1332.[1]  Diversity jurisdiction requires "complete diversity of citizenship both at the time that the case is commenced and at the time that the notice of removal is filed." Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C., 176 F.3d 904, 907 (6th Cir. 1999).  In determining whether there is diversity of citizenship, the Court must disregard nondiverse parties that are fraudulently joined. Id. at 907–09.  It appears that Plaintiff Reed and Defendant Matthews are both citizens of Kentucky.  (See Removal Notice [DN 1] ¶¶ 7, 11; Compl. [DN 1-2] ¶ 1.)  Thus, it appears there is not complete diversity and, given there is no federal question involved, it would seem this Court lacks subject matter jurisdiction over the action.  Removing Defendants argue in their Notice of Removal that the Court nonetheless has subject matter jurisdiction over the matter under 28 U.S.C. § 1332 because the non-diverse Matthews was fraudulently joined.

To address its subject matter jurisdiction over this action, the Court *sua sponte* ordered supplemental briefing to address whether Matthews had been fraudulently joined.  (See Order Sept. 8, 2015 [DN 17].)  The Court noted that only Count V (civil conspiracy) and Count VI

---

[1] The rule of unanimity requires all defendants must join in the notice of removal or file a written consent to the removal.  See 28 U.S.C. § 1446; Loftis v. United Parcel Serv., Inc., 342 F.3d 509, 516 (6th Cir. 2003).  However, Defendant Matthews was not required to join in or consent to removal here because he had not been served with the Summons and Complaint.  See 28 U.S.C. § 1446(b)(2)(A) (emphasis added) ("When a civil action is removed solely under section 1441(a), all defendants *who have been properly joined and served* must join in or consent to the removal of the action.");  Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 533 n.3 (6th Cir. 1999) ("The rule of unanimity requires that in order for a notice of removal to be properly before the court, all defendants who have been served or otherwise properly joined in the action must either join in the removal, or file a written consent to the removal.");  see also Chambers v. HSBC Bank USA, N.A., 796 F.3d 560, 564 (6th Cir. 2015) ("By its terms, however, § 1446(b)(2) only requires the consent of *properly* joined defendants; the consent of a defendant that has been *fraudulently* joined is not necessary.").

(retaliation under KRS 344.280)[2] in the Complaint have been asserted against Matthews.  (See id. 5 n.3.)  The Court requested supplemental briefing with respect to whether Matthews was fraudulently joined with respect to Count VI and allowed Reed the opportunity to "contest Removing Defendants' assertion that there is no colorable claim stated against Matthews in Count V," if he wished to do so, "[o]therwise, the Court will accept the Removing Defendants' assertion."  (Id.)  Removing Defendants submitted a Supplement Brief in support of removal of this matter on September 25, 2015 [DN 18].  Reed did not file a response.  The Court first addresses its subject matter jurisdiction.

## II.    SUBJECT MATTER JURISDICTION – FRAUDULENT JOINDER OF MATTHEWS

The issue is whether Defendant Matthews has been fraudulently joined.  "Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action."  Saginaw Hous. Comm'n v. Bannum, Inc., 576 F.3d 620, 624 (6th Cir. 2009).  "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law."  Coyne v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999) (citing Alexander v. Elec. Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994)).  Stated differently, "the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved."  Probus v. Charter Commc'ns, LLC, 234 F. App'x 404, 407 (6th Cir. 2007) (quoting Alexander, 13 F.3d at 949).  In making such a prediction, the district court must resolve all disputed questions of fact and all ambiguities in the controlling state law in the non-removing party's favor.  Coyne, 183 F.3d at 493.  Removal statutes are strictly construed against removal,

---

[2] The Court also noted in its September 8, 2015 Order that "[a]lthough the claim is labelled 'Count VI: Civil Conspiracy (Retaliation),' the allegations do not correspond with a conspiracy claim.  As the allegations seem to attempt to allege a claim of retaliation under KRS 344.280, the Court will treat it as such."  (Sept. 8, 2015 Order [DN 17] 4 n.2 (citing Compl. [DN 1-2] ¶¶ 97–104).)

Alexander, 13 F.3d at 949, and all doubts as to the propriety of removal are resolved in favor of remand, Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 534 (6th Cir. 1999).  A plaintiff's motive in joining a non-diverse defendant is immaterial to the Court's determination regarding fraudulent joinder.  Jerome-Duncan, 176 F.3d at 907.  "[I]f there is a colorable basis for predicting that [Reed] may recover against non-diverse [Defendant Matthews], the Court must remand the action to state court."  Coyne, 183 F.3d at 493.

As the Court noted, only Count V (civil conspiracy) and Count VI (retaliation under KRS 344.280) in the Complaint have been asserted against Matthews.  As Reed did not file a supplemental brief in response to the Court's Order or otherwise contest the assertion of the Removing Defendants in their Notice of Removal, the Court accepts the Removing Defendants' assertion that there is no colorable claim stated against Matthews in Count V.  Thus, the Court must determine only whether the facts alleged in Reed's Complaint support a colorable cause of action for retaliation against Matthews.

Removing Defendants contend that the facts alleged in Reed's Complaint do not provide any reasonable basis for predicting that Matthews might be liable for retaliation under KRS 344.280.  Under KRS 344.280, it is unlawful "for a person, or for two (2) or more persons to conspire: (1) [t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under [the KCRA]."  KRS 344.280(1).  To state a prima facie case of retaliation under KRS 344.280, a plaintiff must establish that: (1) he engaged in an activity protected by Title VII; (2) the exercise of his civil rights was known by the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the

protected activity and the adverse employment action.  Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth., 132 S.W.3d 790, 803 (Ky. 2004).  Although KCRA claims cannot typically be asserted against individuals, an individual can be liable for retaliation.  Morris v. Oldham Cnty. Fiscal Ct., 201 F.3d 784, 793–94 (6th Cir. 2000).  If a plaintiff fails to allege facts to support each element of a prima facie claim for retaliation against the non-diverse defendant, a finding of fraudulent joinder may be warranted.  See Mills v. Woodford Nat'l Bank, No. 3:14-CV-00639-TBR, 2015 WL 1136502, at *3, 2015 U.S. Dist. LEXIS 30222, at *9 (W.D. Ky. Mar. 11, 2015).

Removing Defendants argue that, although Reed does allege that he engaged in protected conduct by requesting reasonable accommodation and opposing and complaining "about the unlawful practices of Defendants," (Compl. [DN 1-2] ¶¶ 98–100), Reed failed to plead the second and third elements of the prima facie case and did not allege facts to support that Matthews knew about Reed's alleged protected activity or that Matthews was responsible for the alleged retaliatory conduct.  Removing Defendants point out that Reed's failure to allege that Matthews was aware of his protected conduct in Count VI "stands in marked contrast to Plaintiff's allegations in Count VII," (Removing Defs.' Suppl. Br. [DN 18] 6 n.4), where Reed expressly alleges that the exercise of his civil rights "was known by Defendants Gulf Coast, Ginn Group, and SourceAmerica," (Compl. [DN 1-2] ¶ 108).  Additionally, Reed alleges only that he asked GCE—not Matthews—for reasonable accommodations.  (Id. ¶ 22.)  However, Reed does allege that Matthews "stated that Plaintiff should be careful to 'not accommodate himself out of a job.'"  (Id. ¶ 36.)  This would seem to provide support for an inference that Matthews knew of Reed's requesting reasonable accommodations, a protected activity.

However, the Court finds that there is not a colorable basis for predicting that Reed may recover against Matthews for retaliation because Reed does not allege that Matthews was

responsible for any alleged retaliatory action and thus does not allege that Matthews took an adverse employment action.  Throughout the Complaint, Reed specifically alleges that GCE, Ginn Group, and SourceAmerica—not Matthews—were responsible for the alleged retaliatory conduct.  (See Compl. [DN 1-2] ¶¶ 24 (GCE "failed to provide reasonable accommodations"), 35 (GCE "started the 'look back program', wherein they changed doctor's visits against unearned, future vacation time"), 62–63 (GCE "used contrived evaluations to target Plaintiff for termination" and "targeted Plaintiff because of his need and requests for accommodations"), 65 (GCE failed to accommodate Plaintiff), 109 (GCE, Ginn Group, and SourceAmerica took adverse employment action adverse to Plaintiff, including retaliatory negative scoring on performance evaluations), and 113 (GCE, Ginn Group, and SourceAmerica "failed to inform the Plaintiff of his employment termination/status").)  The only allegation in the Complaint pertinent to the third element that might potentially refer to Matthews is the allegation that "Defendant's [sic] constructively discharged the Plaintiff by refusing to give him work hours."  (Id. ¶ 57.)  However, this allegation is insufficient to direct the retaliation claim alleged in Count VI against Matthews because the facts alleged in the Complaint are insufficient as a matter of law to support a retaliation claim under a theory of constructive discharge.  Constructive discharge can be a means of proving the element of an adverse employment action where the employee quits instead of being fired.  See Logan v. Denny's, Inc., 259 F.3d 558, 568 (6th Cir. 2001) ("Plaintiff may establish an adverse employment action by demonstrating that she was constructively discharged.").  "To constitute a constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit."  Moore v. KUKA Welding Sys. & Robot Corp., 171 F.3d 1073, 1080 (6th Cir. 1999).  Here, Reed does not allege anywhere in his

Complaint that he quit.   Instead, Reed alleges throughout his Complaint that he was "terminated."  (See Compl. [DN 1-2] ¶¶ 12, 59, 62, 113.)  For example, Reed alleges that he was terminated "on or about November 12, 2013," (id. ¶ 12), and that he "found out he was terminated in February of 2014," (id. ¶ 59).  This belies any notion that Reed quit, thus no constructive discharge occurred.

As Reed cannot support a retaliation claim on theory of constructive discharge and Reed did not otherwise allege that Matthews took an adverse employment action, he has not satisfied his prima facie case against Matthews.  Hence, under Kentucky law, there is no reasonable basis for predicting that, on the facts alleged, Matthews could be held liable for retaliation.  See Mills, 2015 WL 1136502, at *3, 2015 U.S. Dist. LEXIS 30222, at *9 (finding that defendants met burden of proving that plaintiffs could not establish cause of action for retaliation under the KCRA against non-diverse defendants where plaintiffs failed to allege non-diverse defendants took any adverse employment action).  Accordingly, because Reed failed to plead viable state law causes of action against Matthews, Matthews was fraudulently joined and the Court disregards him in determining diversity of citizenship.  Coyne, 183 F.3d at 493; Alexander, 13 F.3d at 949 (noting that a party is fraudulently joined if there is "no reasonable basis for predicting that the state law might impose liability on the facts involved").  As Reed and the other Defendants are completely diverse, and the amount in controversy is met, the Court has subject matter jurisdiction of this matter under 28 U.S.C. § 1332.

### III.   SOURCEAMERICA'S MOTION FOR JUDGMENT ON THE PLEADINGS OR SUMMARY JUDGMENT

Having determined it has subject matter jurisdiction over this matter, the Court turns to SourceAmerica's motion.

## A. Background

As noted, this case arises out of Reed's employment with and subsequent termination from Defendant GCE.  According to the Complaint, from November 2010 to November 2012, Reed, who is disabled, was employed by Defendant GCE through the AbilityOne Program.  (See Compl. [DN 1-2] ¶¶ 2–3, 17–18, 37.)

*The AbilityOne Program*.  The AbilityOne Program was established by the Javits-Wagner-O'Day ("JWOD") Act, 41 U.S.C. §§ 8501–8506, to provide employment opportunities for people who are blind or have other severe disabilities through government procurement of products and services from nonprofit agencies employing people who are blind or severely disabled.[3]  The Program is overseen by the U.S. AbilityOne Commission, the operating name for the Committee for Purchase From People Who Are Blind or Severely Disabled ("Committee" or "Commission"), an independent federal agency created to administer the Program.  See 41 U.S.C. § 8502; 41 C.F.R. § 51–1.1.

Pursuant to the AbilityOne Program, the Committee maintains and publishes a "Procurement List," which is a catalog of products and services that the Committee has determined to be suitable to be furnished to federal entities by qualified nonprofit agencies ("NPAs") employing persons who are blind or have other severe disabilities.  41 U.S.C. § 8503(a); 41 C.F.R. §§ 51–1.3, –2.2, –2.8.  If "[a]n entity of the Federal Government intend[s] to procure a product or service on the [P]rocurement [L]ist," it must do so from an AbilityOne

---

[3] According to its website, "The AbilityOne® Program is the largest Federal source of employment for people who are blind or have significant disabilities.  The Program is administered by the U.S. AbilityOne Commission, the operating name for the Committee for Purchase From People Who Are Blind or Severely Disabled.  Through a national network of more than 600 nonprofit agencies, the program provides the Federal Government products and services at fair market prices.  The procurement of these products and services results in employment of more than 45,000 individuals."  U.S. AbilityOne Commission, FAQs, AbilityOne.gov, http://www.abilityone.gov/abilityone_program/faqs.html#1 (last visited Dec. 22, 2015); see also Neary v. Se. Vocational Servs., No. CIV.A.3:07CV135-H, 2008 WL 2559248, at *1 n.2, 2008 U.S. Dist. LEXIS 48544, at *3 n.1 (W.D. Ky. June 24, 2008).

participating qualified NPA at a price established by the Committee.  Id. § 8504(a); see 41 C.F.R. §§ 51–1.2(a), –5.2(a) (mandatory source requirement); 48 C.F.R. § 8.705–1(a).  To qualify for participation in the AbilityOne Program, an NPA must certify, on an annual basis, that it "employs blind or other severely disabled individuals for at least 75 percent of the hours of direct labor required for the production or provision of the products or services."  41 U.S.C. § 8501(6)(C); see also id. § 8501(7) (defining "qualified nonprofit agency for the blind").

*SourceAmerica*.  Pursuant to the JWOD Act, the Committee has designated two central nonprofit agencies ("CNAs"), SourceAmerica[4] and the National Industries for the Blind, to assist it in administering the AbilityOne Program and to represent their respective qualified NPAs nationwide in dealing with the Committee.  See 41 U.S.C. § 8503(c); see also 41 C.F.R. §§ 51–3.1, –3.2.  As the CNA representing "[NPAs] employing persons with . . . severe disabilities," 41 C.F.R. § 51–3.1, SourceAmerica coordinates employment opportunities for the severely disabled and performs various functions in furtherance of the JWOD Act, see 41 U.S.C. § 8503(c); 41 C.F.R. § 51–3.2.  SourceAmerica's responsibilities include assessing federal contracting activities for compatibility with the AbilityOne Program, obtaining procurement information from federal contracting entities, evaluating qualifications and capabilities of NPAs, and making recommendations to the Committee.  See 41 C.F.R. § 51–3.2(b)–(d).  SourceAmerica also is required to "[o]versee and assist its [NPAs] to insure contract compliance in furnishing a commodity or a service," id. § 51–3.2(h), and "[m]onitor and assist its [NPAs] to meet the statutory and regulatory requirements to fully participate in the program," id. § 51–3.2(j).

As a CNA, SourceAmerica is responsible for distributing orders, "by direct allocation, subcontract, or any other means," from federal agencies for products or services on the

---

[4] SourceAmerica was formerly known as the National Industries for the Severely Handicapped or NISH.  See Nat'l Telecommuting Inst., Inc. v. United States, 123 Fed. Cl. 595, 599 (2015); Akima Intra-Data, LLC v. United States, 119 Fed. Cl. 520, 524 n.4 (2014).

Procurement List among SourceAmerica's associated state and local NPAs serving the severely disabled. 41 U.S.C. § 8503(c)[5]; 41 C.F.R. § 51–3.2(f). One method by which SourceAmerica distributes such orders is by entering into prime contracts with federal agencies and subcontracts with associated NPAs. 41 U.S.C. § 8503(c); see Matter of: Nat'l Indus. for the Blind, B-409528.20, 2014 SPD P 204, 2014 WL 2980326 (Comp. Gen. July 2, 2014); see also 41 C.F.R. § 51–3.2(k) ("When authorized by the Committee, enter into contracts with Federal contracting activities for the furnishing of commodities or services provided by its nonprofit agencies."). In those instances where SourceAmerica serves as the Prime Contractor, it, upon receipt of an order from the federal contracting agency, will designate the NPA(s) authorized by the Committee to furnish definite quantities of products or specific services. 41 C.F.R. § 51–6.2(k). SourceAmerica also oversees and manages the contractual compliance obligations of its subcontractor(s), see 41 C.F.R. § 51–3.2(h), which may be one or more NPAs in its network or one or more commercial vendors, cf. 41 C.F.R. § 5.1–4.4.

According to the affidavit of Catherine Cooke, Director of Contract Management at SourceAmerica, SourceAmerica does not enter into employment or labor agreements with the subcontractors, individual AbilityOne employees, or subcontractor employees. (Cooke Aff. [DN 9-2] ¶ 4, June 5, 2015.) The subcontractors are the employers of record; SourceAmerica does not employ AbilityOne employees. (Id.)

Relevant to the instance case, the Department of Public Works, Department of the Army, Fort Knox, Kentucky ("DPW Fort Knox") had a requirement to procure, inter alia, facility maintenance services. This requirement was added to the Procurement List by the AbilityOne Commission and the Commission selected Defendant GCE to provide facility maintenance labor

---

[5] CNAs "facilitate the distribution, by direct allocation, subcontract, or any other means, of orders of the Federal Government for products and services on the procurement list among qualified [NPAs] for the blind or qualified [NPAs] for other severely disabled." 41 U.S.C. § 8503(c).

through the AbilityOne Program.  Reed was one of the employees employed by GCE to provide maintenance labor at DPW Fort Knox.

SourceAmerica served as the Prime Contractor for DPW Fort Knox and, in that position, entered into several subcontractor agreements, including with GCE and the other corporate defendant Ginn Group.  (See Compl. [DN 1-2] ¶ 20 ("Defendant SourceAmerica subcontracts out to Defendant Ginn Group and Defendant Gulf Coast.").)  "The relevant subcontracts provide that employees of GCE, like Reed, and employees of Ginn, are not employees of SourceAmerica, and further provide that neither Ginn nor GCE nor their respective employees are agents of SourceAmerica."  (Cook Aff. [DN 9-2] ¶ 6.)

SourceAmerica has moved for judgment on the pleadings on Counts I–VI and Count VIII and for summary judgment on Count VII.  Reed responds substantively only regarding Count I and then, regarding Counts II–VIII, states in conclusory fashion that SourceAmerica's motion is premature and he needs more time to conduct discovery.

### B.  Standard of Review

*Judgment on the Pleadings*.  The standard of review for a Rule 12(c) motion for judgment on the pleadings "is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted."  Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (citing Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 511–12 (6th Cir. 2001)); Fed. R. Civ. P. 12(b)(6), (c).  Upon a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff[]," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007), "accept all well-pled factual allegations as true," id., and determine whether the "complaint states a plausible claim for relief," Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Under this standard, the plaintiff must provide the grounds for his or her entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A plaintiff satisfies this standard only when he or she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  A complaint falls short if it pleads facts "'merely consistent with' a defendant's liability," id. at 678 (quoting Twombly, 550 U.S. at 557), or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct," id. at 679.  Instead, the allegations must "'show[] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Summary Judgment.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular

parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

Rule 56(d). If the non-moving party believes that he has not had the time to discover the evidence he needs to oppose the summary judgment motion, he may, as provided in Rule 56(d), affirmatively ask the court for additional time in which to conduct discovery. 11-56 Moore's Federal Practice - Civil § 56.100[2] (2015); Summers v. Leis, 368 F.3d 881, 887 (6th Cir. 2004). Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). Thus, the nonmovant must show the need for relief by submitting an affidavit or declaration. Id.; Summers, 368 F.3d at 887. The affidavit or declaration filed in support of the nonmovant's request must identify specific information that the nonmovant seeks to discover and that is essential to his opposition to the summary judgment motion. Summers, 368 F.3d at 887. Further, the affidavit or declaration must state exactly how and why the nonmovant expects the information sought will help him in opposing summary judgment, either by raising a genuine dispute of material fact or by demonstrating that the summary judgment movant is not entitled to judgment as a matter of law. See id.

### C. Discussion

SourceAmerica has moved for judgment on the claims asserted in Reed's complaint because Reed fails to state viable claims against SourceAmerica with respect to seven of the

claims asserted in the Complaint and because SourceAmerica is entitled to summary judgment with respect to the remaining eighth claim.  The Court will address each count in turn.

### 1.  Count I: Disability Discrimination

SourceAmerica moves for judgment on the disability discrimination claim set forth in Count I of Reed's Complaint arguing (1) the claim is not asserted against SourceAmerica, (2) Reed acknowledges that SourceAmerica does not employ Reed, and, even if the claim were asserted against SourceAmerica, (3) SourceAmerica is not an "employer" under the Kentucky Civil Rights Act ("KCRA"), KRS 344.030(2).   In response, Reed addresses only the last argument—whether SourceAmerica falls within the statutory definition of "employer" under the KCRA—but wholly fails to address the more fundamental deficiencies identified by SourceAmerica.

Under KRS 344.040, "[i]t is an unlawful practice for an employer: (1) to fail to or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual . . . because the person is a qualified individual with a disability."  KRS 344.040(1)(a).  Because the language of the KCRA mirrors that of federal anti-discrimination laws, courts interpret the Kentucky Act consistently therewith.  See Howard Baer, Inc. v. Schave, 127 S.W.3d 589, 592 (Ky. 2003); Brohm v. JH Props., Inc., 149 F.3d 517, 520 (6th Cir. 1998); Spivey v. B.F. Goodrich Co., 246 F. Supp. 2d 714, 717–18 (W.D. Ky. 2003) (quoting Summers v. Middleton & Reutlinger, P.S.C., 214 F. Supp. 2d 751, 755 (W.D. Ky. 2002)) ("The KCRA's disability discrimination provisions 'track the federal law and should be interpreted consonant with federal interpretation.'").

Under the KCRA,

"Employer" means a person who has eight (8) or more employees within the state in each of twenty (20) or more calendar weeks in the current or preceding

calendar year and an agent of such a person, except for purposes of determining discrimination based on disability, employer means a person engaged in an industry affecting commerce who has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, and any agent of that person, except that, for two (2) years following July 14, 1992, an employer means a person engaged in an industry affecting commerce who has twenty-five (25) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding year, and any agent of that person. For the purposes of determining discrimination based on disability, employer shall not include:

(a) The United States, a corporation wholly owned by the government of the United States, or an Indian tribe; or

(b) A bona fide private membership club (other than a labor organization) that is exempt from taxation under Section 501(c) of the Internal Revenue Service Code of 1986.

KRS 344.030(2).  The parties dispute whether SourceAmerica meets this statutory definition of "employer."  SourceAmerica, proceeding under the first clause in KRS 344.030(2), argues that it does not meet the definition because it does not have eight or more employees within the state of Kentucky.   Reed counters that the second clause, introduced by "except for purposes of determining discrimination based on disability," is the applicable definition and that SourceAmerica meets that definition because it has fifteen or more employees.

The Court, however, need not resolve whether SourceAmerica meets the statutory definition of "employer" under the KCRA.  A prerequisite to liability for discrimination under the KCRA is that an employment relationship exist between the defendant and the plaintiff, that is, the defendant must actually be an employer of the plaintiff.  see Faush v. Tuesday Morning, Inc., --- F.3d ----, 2015 WL 7273268, at *4, 2015 U.S. App. LEXIS 19977, at *10 (3d Cir. 2015) (in order to prevail on Title VII discrimination claim, plaintiff must demonstrate the existence of an "employment relationship" with defendant); Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 408 (4th Cir. 2015) ("An entity can be held liable in a Title VII action only if it is an 'employer' of the complainant."); Bank One, Ky., N.A. v. Murphy, 52 S.W.3d 540, 547 n.2 (Ky.

2001) (Keller, J., concurring in part and dissenting in part) ("KRS 344.040 affords protection from discrimination only to those in an employer-employee relationship"); see also Deal v. State Farm Cty. Mut. Ins. Co. of Texas, 5 F.3d 117, 118 n.2 (5th Cir. 1993) ("Determining whether a defendant is an 'employer' under Title VII or the ADEA involves a two-step process.  First, the defendant must fall within the statutory definition.  Second, there must be an employment relationship between the plaintiff and the defendant."); cf. Sanford v. Main St. Baptist Church Manor, Inc., 449 F. App'x 488, 491–92 (6th Cir. 2011) (acknowledging that, generally, an entity must be an employee's formal employer to face liability, and that the single-employer and joint-employer doctrines enable an employee in certain circumstances to assert employer liability against an entity that is not formally his or her employer).[6]  Reed does not allege that he was, at any time relevant, employed by SourceAmerica.  Instead, he alleges that "[a]t all times relevant to this lawsuit [he] was employed by the Defendant Gulf Coast Enterprises."  (Compl. [DN 1-2] ¶ 2; see Def. GCE's Answer [DN 1-2] ¶ 2 (admitting that Reed was employed by GCE).)  Thus, regardless of whether SourceAmerica falls within the KCRA definition of "employer," because Reed does not allege an employment relationship between himself and SourceAmerica, Reed has failed to state a claim for disability discrimination against SourceAmerica.  See Spivey v. B.F. Goodrich Co., 246 F. Supp. 2d 714, 718–19 (W.D. Ky. 2003) (finding that because plaintiff was never employed by defendant-company, plaintiff's disability discrimination claim under the KCRA must fail.  Further, in Count I of his Complaint, Reed alleges only that Defendant GCE discriminated against him because of his disability.  Nowhere in Count I, nor anywhere else in his Complaint, does Reed allege that SourceAmerica discriminated against him because of his

---

[6]  The Court acknowledges that there are recognized doctrines—the single-employer and joint-employer doctrines—that enable an employee in certain circumstances to assert employer liability against an entity that is not formally his or her employer.  See, e.g., Sanford v. Main St. Baptist Church Manor, Inc., 449 F. App'x 488, 491–92 (6th Cir. 2011); Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 197 (2d Cir. 2005).  These doctrines have not been raised by the parties and the Court does not believe they are applicable on these facts.

alleged disability.  Thus, Reed has failed to plead "factual content that allows the court to draw the reasonable inference that [SourceAmerica] is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Because of his failure to allege that SourceAmerica employed Reed or that SourceAmerica discriminated against him because of his disability, the Court finds that Reed fails to state a claim of disability discrimination against SourceAmerica.  Accordingly, judgment on the pleadings is **granted** in favor of SourceAmerica with respect to Count I of the Complaint.

### 2.  Counts II–VIII

SourceAmerica moves for judgment on Counts II–VIII, arguing that it is entitled to judgment on the pleadings on Counts II–VI and Count VIII and summary judgment on Count VII.  Reed does not respond substantively to SourceAmerica's arguments with respect to Counts II–VIII.  Instead, Reed states in conclusory fashion that SourceAmerica's motion is premature and he needs more time to conduct discovery.  However, Reed's Response is not supported by an affidavit or declaration, as is required by Federal Rule of Civil Procedure 56(d), and does not make the required showing.  Further, SourceAmerica moves for summary judgment on Count VII (retaliation–EEOC) only; SourceAmerica moves for judgment on the pleadings with respect to the remaining claims.  SourceAmerica asserts that no amount of discovery can cure Reed's deficient allegations with respect to Counts II–VI and Count VIII.

The Court will address each Count in turn.

### a.  Count II: Negligent Hiring/Firing/Supervision

In Count II, Reed alleges that Ginn Group and/or GCE negligently hired, retained, and/or supervised Defendant Matthews, who allegedly subjected Reed to "harassment, discrimination, and bullying."  (See Compl. [DN 1-2] ¶¶ 68–74.)  Though these are separate claims, Taylor v.

JPMorgan Chase Bank, N.A., No. CIV. 13-24-GFVT, 2014 WL 66513, at *9, 2014 U.S. Dist. LEXIS 1931, at *29 (E.D. Ky. Jan. 8, 2014), as they are related and afflicted with the same flaw, the Court discusses them together.

To make out a claim for negligent hiring or retention under Kentucky law, a plaintiff must show that "(1) the employer knew or reasonably should have known that the employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." Stalbosky v. Belew, 205 F.3d 890, 894 (6th Cir. 2000) (citing Oakley v. Flor-Shin, Inc., 964 S.W.2d 438, 442 (Ky. Ct. App. 1998) ("an employer can be held liable when its failure to exercise ordinary care in hiring or retaining an employee creates a foreseeable risk of harm to a third person")). In Kentucky, negligent supervision claims are governed by the Restatement (Second) of Agency, see, e.g., Smith v. Isaacs, 777 S.W.2d 912, 914 (Ky. 1989), and "an employer may be held liable for negligent supervision only if he or she knew or had reason to know of the risk that the employment created." Booker v. GTE.net LLC, 350 F.3d 515, 517 (6th Cir. 2003) (citing Restatement (Second) of Agency § 213 (Am. Law Inst. 1958)).

As there is no allegation in Count II, or anywhere else in the Complaint, that SourceAmerica employed, hired, retained, or supervised Matthews, that SourceAmerica had any knowledge of Matthews allegedly discriminatory propensities, or that SourceAmerica engaged in any conduct that would cause it to be liable—either directly or vicariously—for negligent hiring, SourceAmerica argues that Reed cannot state a claim for negligent hiring against it. The Court agrees. Under Kentucky law, "[t]he threshold issue of a negligent hiring, training, or supervision claim is whether the accused tortfeasor was actually an employee of the named defendant." Southard v. Belanger, 966 F. Supp. 2d 727, 744 (W.D. Ky. 2013). Reed alleges that Matthews

was employed by Ginn Group; there is no allegation that Matthews was employed by SourceAmerica.  Thus, Reed has failed to allege sufficient facts to state a plausible claim for negligent hiring, retention, or supervision against SourceAmerica.  Accordingly, the Court **grants** judgment on the pleadings in favor of SourceAmerica as to Count II.

### b.   Count III: Promissory Estoppel

In Count III of his Complaint, Reed asserts that GCE induced him to accept employment by promising him that it would "protect its employees" in the workplace.  (Compl. [DN 1-2] ¶¶ 75–81.)  "Promissory estoppel can be invoked when a party reasonably relies on a statement of another and materially changes his position in reliance on the statement." Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc., 113 S.W.3d 636, 642 (Ky. Ct. App. 2003).  Under Kentucky law, the elements of promissory estoppel are: "(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." Harris v. Burger King Corp., 993 F. Supp. 2d 677, 691 (W.D. Ky. 2014) (quoting C.A.F. & Assocs., LLC v. Portage, Inc., 913 F. Supp. 2d 333, 350–51 (W.D. Ky. 2012)). "Reliance on the promise must be justified." Id. (citing Butler v. Progressive Cas. Ins. Co., No. CIV.A.5:04 CV 84 R, 2005 WL 1009621, at *4, 2005 U.S. Dist. LEXIS 7494, at *11 (W.D. Ky. Apr. 25, 2005)).

Reed's promissory estoppel claim is asserted against GCE; Reed does not assert his promissory estoppel claim against SourceAmerica.  SourceAmerica contends that, moreover, it is undisputed that SourceAmerica never employed Reed, (see Compl. [DN 1-2] ¶ 2), and therefore it could not have induced him to accept an offer of employment.  As this claim is not brought against SourceAmerica, the Court **dismisses** Count III as to SourceAmerica.

### c. **Count IV: Failure to Protect**

In Count IV of his Complaint, Reed alleges that Defendant GCE had a duty to "maintain a safe atmosphere for [its] employees," (Compl. [DN 1-2] ¶ 83), that Defendant Ginn Group hired various individuals "who acted against the provisions of state law" and "engaged in a course of conduct that was abusive, discriminatory, and tortious," (id. ¶¶ 84–85), that Defendant GCE "tolerated" that behavior and "was on notice of it," (id. ¶ 86), and that Reed was a victim of the individuals' "cruel and devious treatment," (id. ¶ 87). Reed then alleges in conclusory fashion that "Defendant Gulf Coast, Defendant Ginn Group, and Defendant SourceAmerica did not act to protect Plaintiff to his detriment." (Id. ¶ 87.)

SourceAmerica contends that Reed does not appear to bring his "failure to protect" claim against it, which did not employ Reed or the allegedly offending individuals identified in the Complaint. To the extent that Reed does assert this claim against it, SourceAmerica contends that Reed failed to identify the source of any alleged "duty to protect" and that it is not aware of any common law tort that imposes liability for failing to protect an individual.

A negligence action requires (1) that the defendant owe the plaintiff a duty of care; (2) a breach of that duty; and (3) consequent injury. Mullins v. Commonwealth Life Ins. Co., 839 S.W.2d 245, 247 (Ky. 1992). "If no duty is owed by the defendant to the plaintiff, there can be no breach thereof, and therefore no actionable negligence." West v. Huxol, --- F. Supp. 3d ----, 2015 WL 5611653, at *6, 2015 U.S. Dist. LEXIS 127172, at *17 (W.D. Ky. 2015) (quoting Jenkins v. Best, 250 S.W.3d 680, 688 (Ky. Ct. App. 2007)). As a general rule, there is no statutory or common law duty to take affirmative precautions or act for the aid or protection of another, Restatement (Second) of Torts § 314 (Am. Law Inst. 1965), absent a special relationship between the parties, see id. §§ 314A, 314B. See James v. Wilson, 95 S.W.3d 875, 889–90 (Ky.

Ct. App. 2002); cf. Bennett v. MIS Corp., 607 F.3d 1076, 1099 (6th Cir. 2010) (applying Michigan law) ("Negligence law typically does not impose an affirmative duty to act for the protection of another; however, Michigan law recognizes a number of special relationships that impose such affirmative duties."). Thus, absent a special relationship, there is no affirmative duty to act to protect another. Here, Reed alleges that he is an employee of GCE. The employer-employee relation is one such special relationship that can give rise to a duty, see Restatement (Second) of Torts § 314B. Indeed, Reed alleges that GCE had a duty to "maintain a safe atmosphere for [its] employees." (Compl. [DN 1-2] ¶ 83.) However, Reed does not allege facts sufficient to support an inference that SourceAmerica was in any such special relationship with Reed giving rise to a duty to act affirmatively to protect Reed.

There are also not sufficient facts alleged to support an inference that SourceAmerica had a duty to control the conduct of the alleged tortfeasors. "As a general rule, an actor whose own conduct has not created a risk of harm has no duty to control the conduct of a third person to prevent him from causing harm to another." Grand Aerie Fraternal Order of Eagles v. Carneyhan, 169 S.W.3d 840, 849 (Ky. 2005) (collecting cases). "A duty can, however, arise to exercise reasonable care to prevent harm by controlling a third person's conduct where: '(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection.'" Id. (quoting Restatement (Second) of Torts § 315 (Am. Law Inst. 1965)). As noted above, Reed does not assert that a special relation exists between SourceAmerica and Reed. Nor are there factual assertions supporting that a special relation exists between the alleged tortfeasors—who are employed by GCE or Ginn Group—and SourceAmerica. Accordingly, Reed has not pleaded "factual content that allows the

21

court to draw the reasonable inference that [SourceAmerica] is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, and therefore the Court **grants** judgment on the pleadings in favor of SourceAmerica as to Count IV.

### d.  Count V: Civil Conspiracy

In Count V of his Complaint, Reed alleges that "SourceAmerica, through its agents, including Defendant Gulf Coast, Defendant Ginn Group, Defendant Reins, and Defendant Matthews, have been and are engaging in a pretextual and corrupt combination of schemes to discriminate on the basis of disability in violation of KRS 344," (Compl. [DN 1-2] ¶ 90), and that "as a result of said schemes, Plaintiff was constructively terminated although he possesses the requirements necessary to hold his position," (id. ¶ 91).  Further, Reed alleges that "SourceAmerica is responsible for the acts of agents and employees while agents and employees are acting within their scope of employment," (id. ¶ 93), and that "a conspiracy is ongoing within Defendant SourceAmerica, Defendant Ginn Group, and Defendant Gulf Coast's facilities to violate the civil rights of employees," (id. ¶ 94).

Though it is not entirely clear, it appears from the allegations in the Complaint that Reed is alleging that Defendants GCE, Ginn Group, Reins,[7] and Matthews engaged in a conspiracy to violate civil rights of employees by discriminating on the basis of disability and that SourceAmerica is vicariously liable for the alleged conspiracy because the alleged conspirators are "agents" of SourceAmerica and "SourceAmerica is responsible for the acts of agents and employees while agents and employees are acting within their scope of employment."  (Id. ¶¶ 90, 93.)

Under Kentucky law, a claim for civil conspiracy requires "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful

---

[7] The Court is unclear on who "Defendant Reins" is, but notes that there is no defendant "Reins" named in the caption of the Complaint.  See Fed. R. Civ. P. 10(a).  An Aubrey Reins is identified in the "facts" section of the Complaint.  (See, e.g., Compl. [DN 1-2] ¶ 39.)

act, or to do a lawful act by unlawful means." Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008) (quoting Smith v. Bd. of Educ. of Ludlow, 94 S.W.2d 321, 325 (Ky. 1936)).  "In Kentucky, 'civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort.'" Christian Cnty. Clerk ex rel. Kem v. Mortgage Elec. Registration Sys., Inc., 515 F. App'x 451, 458–59 (6th Cir. 2013) (quoting Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V., Nos. 2008-CA-002389-MR, 2009-CA-00026-MR, 2010 WL 2696278, at *13, 2010 Ky. App. Unpub. LEXIS 555, at *38 (Ky. Ct. App. July 9, 2010)).  As civil conspiracy is not an independent tort, one who cannot be liable as a matter of law for the underlying tort cannot be liable for conspiracy to commit that tort.  See CNH Capital Am. LLC v. Hunt Tractor, Inc., 568 F. App'x 461, 472–73 (6th Cir. 2014), as amended (July 2, 2014) ("CNH's claim of civil conspiracy to commit a fraudulent conveyance must fail.  Pagano cannot be liable for fraudulent conveyance because he was neither the transferee nor transferor.  Pagano cannot be liable for conspiring to perform a tort he could not commit as a matter of law."); GATX Corp. v. Addington, 879 F. Supp. 2d 633, 649–50 (E.D. Ky. 2012) (a party who cannot be directly liable for underlying tort cannot engage in the underlying unlawful act of a conspiracy to commit that tort and therefore it is "legally impossible" for that party to conspire to commit that tort); see also In re Minh Vu Hoang, No. 05-21078-TJC, 2012 WL 195316, at *4–5, 2012 Bankr. LEXIS 283, at *10–19 (Bankr. D. Md. Jan. 23, 2012) (holding that one may not be liable for civil conspiracy unless he is legally capable of committing the underlying tort); Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 869 P.2d 454, 459 (Cal. 1994) ("Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity.  It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law

principles.  Because a party to a contract owes no tort duty to refrain from interference with its performance, he or she cannot be bootstrapped into tort liability [for interference with contract] by the pejorative plea of conspiracy.").

SourceAmerica cites four reasons why the allegations against it of conspiracy do not establish a cause of action upon which relief can be granted.  SourceAmerica argues (1) that the conspiracy claim is time barred by the one-year statute of limitations, KRS 413.140(1)(c); (2) that because SourceAmerica is not an "employer" under the KCRA, it cannot be held liable for discrimination under the KCRA either individually or in a conspiracy; (3) that Reed did not allege facts sufficient to establish an agency relationship and thus did not state a claim for civil conspiracy based on vicarious liability; and (4) that even if Reed has alleged facts sufficient to support a finding of an agency relationship among Defendants, the "intra-corporate conspiracy" doctrine bars the conspiracy claim.

As noted, Reed's civil conspiracy claim against SourceAmerica appears to be premised upon a theory of vicarious liability, and the Court will first address SourceAmerica's arguments regarding this theory of liability.  SourceAmerica argues that it is entitled to judgment on the pleadings because the Complaint fails to plead facts sufficient to demonstrate the existence of an agency relationship between SourceAmerica and other Defendants.  The Court agrees.

"It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment."  Meyer v. Holley, 537 U.S. 280, 285 (2003); see Williams v. Ky. Dep't of Educ., 113 S.W.3d 145, 151 (Ky. 2003), as modified (Sept. 23, 2003) ("Under common law principles of agency, a principal is vicariously liable for damages caused by torts of commission or omission of an agent or subagent, other than an independent contractor, acting on

behalf of and pursuant to the authority of the principal.").  "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."  Restatement (Third) Of Agency § 1.01 (Am. Law Inst. 2006); see Ernst & Young, LLP v. Clark, 323 S.W.3d 682, 694 (Ky. 2010) (relying on Restatement (Third) of Agency § 1.01 for definition of "agency").  In Kentucky, "[a]gency is a legal conclusion to be reached only after analyzing relevant facts" and "[t]he burden of proving agency is on the party alleging its existence."  Wright v. Sullivan Payne Co., 839 S.W.2d 250, 253 (Ky. 1992).

When attempting to plead liability through agency, a "plaintiff must sufficiently allege that an agency relationship existed in order to survive a Rule 12(b)(6) motion to dismiss."  The Wooster Brush Co. v. Bercom Int'l, LLC, No. 5:06–CV–474, 2008 WL 1744782, at *3, 2008 U.S. Dist. LEXIS 29971, at *6 (N.D. Ohio Apr. 11, 2008) (quoting Bird v. Delacruz, 2:04–CV–661, 2005 WL 1625303, at *4, 2005 U.S. Dist. LEXIS 48388, at *11 (S.D. Ohio July 6, 2005)).  "It is insufficient to merely plead the legal conclusions of agency."  Bird, 2005 WL 1625303, at *4, 2005 U.S. Dist. LEXIS 48388, at *10 (quoting Gunderson v. ADM Inv'r Servs., Inc., 85 F. Supp. 2d 892, 905 (N.D. Iowa 2000)); Pixler v. Huff, No. 3:11-CV-00207-JHM, 2012 WL 3109492, at *9, 2012 U.S. Dist. LEXIS 106492, at *25–26 (W.D. Ky. July 31, 2012) ("While the Court is bound to accept all well-pled *factual* allegations, the existence of an agency relationship is a legal determination that is not entitled to the same presumption.  See Papasan v. Allain, 478 U.S. 265, 286 (1986) ('Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.').").  Instead, a plaintiff "must plead sufficient facts to establish

an agency relationship." Bird, 2005 WL 1625303, at *4, 2005 U.S. Dist. LEXIS 48388, at *11 (citing Cohen v. Standard Bank Inv. Corp. Ltd., 1998 WL 782024, at *6 (S.D.N.Y. 1998)); see In re Commercial Money Ctr., Inc., No. 102CV16000, 2005 WL 2233233, at *18, 2005 U.S. Dist. LEXIS 45490, at *74–75 (N.D. Ohio Aug. 19, 2005) ("[A] claimant must plead facts that would support a finding that the alleged agents had actual or apparent authority to act on behalf of another.") aff'd sub nom. Commercial Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327 (6th Cir. 2007).

Here, Reed alleges that "SourceAmerica, *through its agents*, including Defendant Gulf Coast, Defendant Ginn Group, Defendant Reins, and Defendant Matthews, have been and are engaging in a pretextual and corrupt combination of schemes to discriminate on the basis of disability in violation of KRS 344," (Compl. [DN 1-2] ¶ 90 (emphasis added)), and that "SourceAmerica is responsible for the acts of agents and employees while agents and employees are acting within their scope of employment," (id. ¶ 93). These are mere labels and legal conclusions. The Complaint does not contain sufficient factual allegations to give rise to an inference of control/agency. Pursuant to the AbilityOne Program, SourceAmerica distributed, via subcontracts, DPW Fort Knox's order for facility maintenance services to Ginn Group and GCE. (See Compl. [DN 1-2] ¶ 20). See 41 U.S.C. § 8503(c); 41 C.F.R. §§ 51–3.2, –4.4, 6.2(k). Because Reed has failed to plead sufficient facts to demonstrate the existence of an agency relationship between SourceAmerica and the other Defendants, Reed has failed to allege a plausible basis to hold SourceAmerica liable for the other Defendants' alleged conspiracy to discriminate based on disability. See Wooster, 2008 WL 1744782, at *2–3, 2008 U.S. Dist. LEXIS 29971, at *6–8; Bird, 2005 WL 1625303, at *4, 2005 U.S. Dist. LEXIS 48388, at *10–12. Accordingly, Count V fails to state a claim for vicarious liability.

SourceAmerica also argues that even if the Court were to find that Reed has alleged facts sufficient to support a finding of an agency relationship among the Defendants, Reed's civil conspiracy claim fails nonetheless based on the intra-corporate conspiracy doctrine, which states that a corporation cannot conspire with its own agents or employees because they are all members of the same collective entity and so there is not two separate people as required to form a conspiracy.  See Roof v. Bel Brands USA, Inc., No. 4:14CV-00071-JHM, 2014 WL 5243051, at *5, 2014 U.S. Dist. LEXIS 146818, at *11–12 (W.D. Ky. Oct. 15, 2014) (quoting McGee v. Cont'l Mills, Inc., No. 5:09-CV-00155-R, 2009 WL 4825010, at *2, 2009 U.S. Dist. LEXIS 115519, at *5 (W.D. Ky. Dec. 11, 2009)).  As the Court has found that Reed fails to allege facts sufficient to support a finding of an agency relationship, the Court does not address SourceAmerica's argument regarding the intra-corporate conspiracy doctrine.

If Reed were asserting the claim of conspiracy against SourceAmerica based on direct liability, the claim would fail as a matter of law.  As discussed, as SourceAmerica was not Reed's employer, SourceAmerica cannot be liable for disability discrimination under the KCRA.  See supra Section III.C.1; Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 408 (4th Cir. 2015) ("An entity can be held liable in a Title VII action only if it is an 'employer' of the complainant.").  A party who cannot be liable for the underlying tort as a matter of law—as SourceAmerica cannot be liable for the underlying disability discrimination claim—cannot be liable for conspiracy to commit that tort.  See CNH Capital, 568 F. App'x at 472–73; see also McGee, 2009 WL 4825010, at *1, 2009 U.S. Dist. LEXIS 115519, at *3–4 (plaintiff's claim that defendants, plaintiff's former employer and two of its employees, had conspired to wrongfully terminate her in violation of KRS 342.197 was dismissed under Rule 12(b)(6) as to the two employees because liability for a violation of KRS 342.197 runs only to the employer of the

employee-plaintiff and the individuals could not be held individually liable for retaliatory discharge).  Thus, SourceAmerica cannot be held liable for conspiracy to discriminate based on disability in violation of the KCRA.

Given that the Court has found that conspiracy claim fails as a matter of law on both direct liability and vicarious liability theories, the Court does not need to address whether the KCRA conspiracy claims are untimely.  For the reasons stated above, judgment on the pleadings is **granted** in favor of SourceAmerica as to Count V.

### e.  Count VI: Retaliation, KRS 344.280

In Count VI, Reed appears to allege a claim under KRS 344.280 of retaliation for requesting reasonable accommodations and opposing unlawful discrimination.[8]  Under KRS 344.280, it is unlawful "for a person, or for two (2) or more persons to conspire: (1) [t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under [the KCRA]." KRS 344.280(1).  To state a prima facie case of retaliation under KRS 344.280, a plaintiff must demonstrate that: (1) he engaged in an activity protected by Title VII; (2) the exercise of his civil rights was known by the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.  Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth., 132 S.W.3d 790, 803 (Ky. 2004).

---

[8] As the Court noted previously and in its September 8, 2015 Order, "[a]lthough the claim is labelled 'Count VI: Civil Conspiracy (Retaliation),' the allegations do not correspond with a conspiracy claim.  As the allegations seem to attempt to allege a claim of retaliation under KRS 344.280, the Court will treat it as such."  (Sept. 8, 2015 Order [DN 17] 4 n.2 (citing Compl. [DN 1-2] ¶¶ 97–104).)  SourceAmerica argues that to the extent that Reed's claim is based on common law civil conspiracy, his claim should be dismissed for the same reasons that Count V should be dismissed.

In Count VI, Reed asserts that he "requested reasonable accommodations," which "is a protected activity under the" KCRA, and "was punished for his request," (Compl. [DN 1-2] ¶¶ 98–99), that he "opposed and complained about the unlawful practices of Defendants Reins, Matthews, Ginn Group, and Source America [sic]," (id. at ¶ 100), that he "was punished by adverse employment actions due to his lawful actions," (id. at ¶ 101), and that "the retaliatory actions against Plaintiff are ongoing," (id. at ¶ 102).

SourceAmerica contends that Reed's allegations in Count VI fail to state a claim of retaliation because Reed failed to plead factual allegations sufficient to support the second or third elements of a claim of retaliation against SourceAmerica.  Reed has alleged that he engaged in two types of protected activity; however, he does not allege that SourceAmerica had knowledge of him engaging in either.   Reed alleges that he requested reasonable accommodations and was punished for his request, but he does not allege that he requested accommodations from SourceAmerica, that SourceAmerica knew of any request for accommodations, or that SourceAmerica was involved in either denying his request for accommodations or in retaliating against Reed because of his request.  And while Reed alleges that he "opposed and complained about the unlawful practices of . . . SourceAmerica," (Compl. [DN 1-2] ¶ 100), he does not allege that SourceAmerica had knowledge of this protected activity. Without any factual allegations that SourceAmerica had knowledge of Reed's engaging in protected activity—an essential element of retaliation under the KCRA—the Court cannot reasonably infer that SourceAmerica engaged in unlawful retaliation against Reed   See D'Ambrosio v. Marino, 747 F.3d 378, 383 (6th Cir. 2014) (quoting Phila. Indem. Ins. Co. v. Youth Alive, Inc., 732 F.3d 645, 649 (6th Cir. 2013)) (To survive a motion for judgment on the pleadings or motion to dismiss for failure to state a claim, a complaint must contain "either direct

or inferential allegations respecting all material elements necessary for recovery under a viable legal theory"); Saunders v. Ford Motor Co., No. 3:14-CV-00594-JHM, 2015 WL 1980215, at *6, 2015 U.S. Dist. LEXIS 57368, at *17 (W.D. Ky. May 1, 2015) (dismissing plaintiff's KCRA retaliation claim because plaintiff failed to allege that defendant had knowledge of plaintiff's protected activity).

Further, with respect to the third element, Reed fails to plead "factual content that allows the court to draw the reasonable inference that [SourceAmerica] is liable for the misconduct alleged," Iqbal, 556 U.S. at 678.  Reed alleges that he was "punished by adverse employment actions" and that "the retaliatory actions against [him] are ongoing."  SourceAmerica contends that these allegations are deficient because they are not supported by factual allegations sufficient for the Court to infer that SourceAmerica engaged in unlawful conduct and, thus, they amount to nothing more than a "formulaic recitation of the elements of a cause of action," Twombly, 550 U.S. at 555 (plaintiff cannot state a claim with a formulaic recitation of the elements of a cause of action).  The Court agrees and finds that the Complaint does not contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 570, against SourceAmerica.  Because Reed has not alleged that SourceAmerica took an adverse employment action, he has not satisfied his prima face case.  See Mills, 2015 WL 1136502, at *3, 2015 U.S. Dist. LEXIS 30222, at *9 (dismissing plaintiff's KCRA retaliation claim against one defendant because plaintiff failed to allege that that defendant took an adverse employment action).  Accordingly, the Court **grants** judgment on the pleadings in favor of SourceAmerica as to Count VI.

### f.   Count VII: Retaliation (EEOC)

In Count VII, Reed asserts a claim under KRS 344.280 for retaliation for filing a complaint with the EEOC.[9]  As noted above, to prove a prima facie case of retaliation, a plaintiff must establish that: (1) he engaged in protected activity; (2) the exercise of his civil rights was known by the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.  Brooks, 132 S.W.3d at 803.

Reed alleges that he "engaged in a protective [sic] activity by filing a complaint with the EEOC," that "the exercise of [his] civil rights was known by Defendants Gulf Coast, Ginn Group[,] and SourceAmerica," that "thereafter, Defendants Gulf Coast, Ginn Group, and SourceAmerica took employment action adverse to Plaintiff, including retaliatory negative scoring on performance evaluations," and "[t]hat there is a causal connection between the protected activity and the adverse employment action."  (Compl. [DN 1-2] ¶¶ 107–110.)

SourceAmerica moves for summary judgment on Reed's Count VII, arguing it is entitled to judgment as a matter of law because the undisputed evidence shows that SourceAmerica was not aware that Reed filed a charge of discrimination with the EEOC and thus Reed cannot establish an essential element of the claim.  In support of its motion, SourceAmerica provides the affidavit of Catherine Cooke, the Director of Contract Management at SourceAmerica.  According to that evidence, "SourceAmerica was not aware that Reed filed a Charge of Discrimination with the [EEOC]."  (Cooke Aff. [DN 9-2] ¶ 8, June 5, 2015.)  SourceAmerica additionally contends that, as Reed was employed by GCE, not SourceAmerica, GCE would

---

[9] It is unclear from the Complaint when Reed allegedly filed the EEOC complaint and what the EEOC complaint was complaining of.  The Complaint alleges only "[t]hat Plaintiff filed an EEOC Complaint," (Compl. [DN 1-2] ¶ 38), and "[t]hat Plaintiff engaged in a protective [sic] activity by filing a complaint with the EEOC," (id. ¶ 107).

have been named Respondent on any charge of discrimination.  SourceAmerica asserts that GCE is a subcontractor of SourceAmerica's and the relevant subcontract between the two entities provides that neither GCE nor its employees are employed by SourceAmerica.  Thus, SourceAmerica contends that it did not know and had no reason to know about Reed's charge of discrimination.

Reed responds that SourceAmerica's motion is premature because the parties have not had the opportunity to conduct any discovery.  Reed contends that although "SourceAmerica claims that its contracts explicitly state that organizations it subcontracts with, and the employees of those organizations are not agents or employees of SourceAmerica, there is no way to validate this assertion without examining the contracts after requesting the documents through discovery."  (Pl.'s Resp. to Def. SourceAmerica's Mot. J. Pleadings [DN 14] 4–5 (citing Def. SourceAmerica's Mem. Supp. J. Pleadings or Summ. J.  [DN 9-1] 1–3).)  Reed further contends that "the remaining questions of fact, specifically whether SourceAmerica can be held vicariously liable in regard to all counts, must be determined through discovery."  (Id. at 5.)

After a party moves for summary judgment, "the party opposing the motion may, by affidavit, explain why he is unable to present facts essential to justify the party's opposition to the motion."  Summers v. Leis, 368 F.3d 881, 887 (6th Cir. 2004) (citing Fed. R. Civ. P. 56(f)[10]).  In that situation, the Court "may permit further discovery so that the nonmoving party can adequately oppose the motion for summary judgment."  Wallin v. Norman, 317 F.3d 558, 564 (6th Cir. 2003).  "The burden is on the party seeking additional discovery to demonstrate why such discovery is necessary."  Summers, at 887 (citing Wallin, 317 F.3d at 564).  "Bare allegations or vague assertions of the need for discovery are not enough."  Id. at 887.  "In order

_____

[10] The provisions of subdivision (d) appeared in subdivision (f) prior to the December 1, 2010 amendment of Rule 56.  Fed. R. Civ. P. 56 advisory committee note.

to fulfill the requirements of Fed. R. Civ. P. 56[(d)], [Reed] must state with 'some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment.'" Id. (quoting Simmons Oil Corp. v. Tesoro Petroleum Corp., 86 F.3d 1138, 1144 (Fed. Cir. 1996)).  The facts sought must be material; thus, if the facts could not affect the outcome of the summary judgment motion, there is no need to permit discovery.  See Thornton v. Graphic Commc'ns Conference of Int'l Bhd. of Teamsters Suppl. Ret. & Disability Fund, 566 F.3d 597, 618 (6th Cir. 2009) (district court did not abuse its discretion in denying plaintiff's motion for additional time for discovery because desired discovery would not have affected outcome of the case); Ball v. Union Carbide Corp., 385 F.3d 713, 720–21 (6th Cir. 2004) (no abuse of discretion in denying discovery request because information sought was irrelevant to issue of statute of limitations, which was the basis of which summary judgment was granted).

Here, Reed's assertion regarding the need for discovery is not accompanied by an affidavit or declaration as is required by Federal Rule of Civil Procedure 56(d).  Although vague, it appears Reed seeks in discovery (1) the subcontracts between SourceAmerica and GCE and SourceAmerica and Ginn Group and (2) nonspecific, speculative facts that could support a theory that SourceAmerica is vicariously liable for all claims in the Complaint.  Reed does not make clear exactly how and why the facts hoped to be uncovered will preclude summary judgment, either by raising a genuine dispute as to a material fact or by demonstrating that SourceAmerica is not entitled to judgment as a matter of law.  As SourceAmerica points out, it moved for summary judgment on Count VII on the ground that it was not aware that Reed filed an EEOC complaint and it supported its motion with an affidavit.  Based on the Complaint, it appears Reed brings the retaliation claim in Count VII directly against SourceAmerica; there is no indication that he is

attempting to hold SourceAmerica vicariously liable in Count VII.[11]  It is unclear, and Reed has not elaborated, how the discovery of facts relevant to a theory of vicarious liability—a theory that is not alleged in the Complaint—would help Reed oppose the motion.  Further, Reed has simply not explained, as is his burden to do, how the pertinent subcontracts would help him oppose SourceAmerica's motion for summary judgment as to Count VII.  For these reasons, the Court **grants** summary judgment in favor of SourceAmerica on Reed's Count VII.

### g.  Count VIII: Negligent Infliction of Emotional Distress

In Count VIII of his Complaint, Reed brings a claim a claim for negligent infliction of emotional distress ("NIED") purportedly against Defendants GCE, Ginn, and Source America for having "negligently failed to inform the Plaintiff of his employment termination/status." (Compl. [DN 1-2] ¶ 113.)  To state a claim for NIED under Kentucky law a plaintiff must establish the basic "elements of a common law negligence claim: (1) the defendant owed a duty of care to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury."  Osborne v. Keeney, 399 S.W.3d 1, 17 (Ky. 2012).  In addition, the plaintiff must also show, by "expert medical or scientific proof," "'severe' or 'serious' emotional injury," i.e., one that "a reasonable person, normally constituted, would not be expected to endure."  Id. at 17–18.  A failure to establish any of these elements is fatal to the claim.  Blust v. Berea Coll., 431 F. Supp. 2d 703, 704 (E.D. Ky. 2006) (citing M & T Chems. Inc. v. Westrick, 525 S.W.2d 740, 741 (Ky. 1974)).  Thus, a complaint asserting a NIED claim must allege facts that if proven would establish each element of the claim, see D'Ambrosio, 747 F.3d at 383, and conclusory statements without supporting factual allegations will not withstand a motion to dismiss, see Twombly, 550 U.S. at 555.

---

[11] Based on the Complaint, the only claim that Reed appears to be asserting SourceAmerica is vicariously liable for is the claim for civil conspiracy to discriminate in violation of the KCRA (Count V), which SourceAmerica moved for judgment on the pleadings on.

SourceAmerica argues that Reed has failed to state a viable claim for NIED against it because Reed failed to establish the first element: that SourceAmerica owed Reed a duty of care or any other kind of duty. SourceAmerica contends that, although Reed alleges that SourceAmerica negligently failed to inform him of his "employment termination/status," Reed fails to allege that SourceAmerica had a duty to keep him informed about his employment status. SourceAmerica asserts that because Reed was employed by GCE, not SourceAmerica, (see Compl. [DN 1-2] ¶ 2), "to the extent that a duty to inform employees of their employment status exists under Kentucky law, such a duty would be owed by GCE, and not by SourceAmerica." (Def. SourceAmerica's Mem. Supp. J. Pleadings or Summ. J. [DN 9-1] 16.) The Court agrees. Reed has not alleged that SourceAmerica owed a duty to him to inform him of his employment termination/status, let alone identified the source of any such duty. See Merrick v. Diageo Americas Supply, Inc., 5 F. Supp. 3d 865, 877 (W.D. Ky. 2014) (dismissing plaintiffs' negligence claim on the ground that plaintiffs had not pled facts sufficient to establish that defendant owed them a duty of care or that defendant breached that duty) aff'd, 805 F.3d 685 (6th Cir. 2015). Thus, the Court finds that Reed failed to allege facts sufficient to establish the element of duty, an essential element of a claim for NIED under Kentucky law, Osborne, 399 S.W.3d at 17. Accordingly, the Court **grants** judgment on the pleadings in favor of SourceAmerica on Count VIII.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant SourceAmerica's Motion for Judgment on the Pleadings or Motion for Summary Judgment [DN 9] is **GRANTED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

January 6, 2016

cc:     Counsel of Record