UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ROBERT RAY REED                          )
                                         )
              Plaintiff,                 )
v.                                       ) CIVIL ACTION NO. 3:15-cv-295-JHM-CHL
                                         )
GULF COAST ENTERPRISES, ET AL.           )
                                         )
              Defendants,                )

### DEFENDANT, GULF COAST ENTERPRISES', MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Comes now the Defendant, Gulf Coast Enterprises ("Gulf Coast" or "GCE"), by and through counsel, and hereby submits this Memorandum of Law in Support of its Motion for Summary Judgment.

**I.      STATEMENT OF FACTS**

Defendant, Gulf Coast, hereby incorporates by reference the factual background of this matter as set forth in Defendant SourceAmerica's Motion for Summary Judgment [DN 9], this Court's Memorandum Opinion & Order in regards to the same [DN 20], and additionally states the following:

**a.   Contract Entities**

Gulf Coast is a division of Lakeview Center, Incorporated, which provides employment for individuals with disabilities.  Based in Pensacola, Florida, GCE provides custodial services, food services, administrative support, facilities management and hospital housekeeping.  GCE's mission is to help people with disabilities overcome life's challenges by connecting them to meaningful jobs. Since its establishment in 1986, GCE, with nearly 1,600 employees, has grown to become a leading employer in the private sector of persons with disabilities. GCE is an Equal Opportunity Employer that

complies with the requirements of the Americans with Disabilities Act and maintains a non-discrimination workplace policy.

GCE is a provider of service contracts under the authority of the AbilityOne Program.  This program is a federal initiative to assist people with significant disabilities find employment by working within a national network of over 600 Nonprofit Agencies that sell products and services to the U.S. government.  Total Facilities Management ("TFM") is a service provided by the AbilityOne Program. The National Industries for the Severely Handicapped ("NISH") is the prime contractor for the TFM operation at Ft. Knox, Kentucky.  NISH sub-contracts work to The Ginn Group ("TGG") and to GCE, which are separate entities. At all-times relevant herein, GCE employed Mr. Reed; TGG employed Mr. Reed's supervisors, including Gary Matthews. [DN 62-1 at 2]. A Lakeview Center, Inc. (of which GCE is a division of) employee, Bill VanCleave is the onsite Human Resources Manager for both GCE Total Facilities Management Department and the GCE Custodial Department.  Mr. Ron Shipley is the Project Manager for both the TFM and Custodial GCE contracts.  At the time in question, one hundred and one (101) of the one hundred and sixteen (116) GCE employees working at Ft. Knox have a documented disability**.**

GCE is an Equal Opportunity Employer that maintains and enforces a policy that prohibits discrimination against any employee or applicant for employment because of gender, race, age, color, disability, marital status, national origin, religion, status as a disabled veteran or veteran of the Vietnam era, or other category protected by federal, state or local law.  (Id.).  GCE has a policy wherein it does not engage in retaliation against anyone who properly reports violations of law, regulations or GCE policies. (Id.).  Employees are advised of this policy and similar others within the Employee Handbook. (Id.) (See also Section 2 of GCE Employee Handbook attached as **Exhibit A** and GCE Equal Employment Opportunity).

**b.  Mr. Reed's GCE Work History**

Mr. Reed completed an on-line application for employment with GCE on June 1, 2011. (Exhibit B; Employment Documentation).   On July 6, 2011, the Office of Vocational Rehabilitation with the Education and Workforce Development Cabinet of the Commonwealth of Kentucky sent a letter to the GCE Human Resources Department indicating that Mr. Reed was a client of the Office of Vocational Rehabilitation. (Exhibit B).   The letter indicated that Mr. Reed had a diagnosis of anxiety, attention deficit hyperactivity disorder, post-traumatic stress disorder, tinnitus, right knee injury, bilateral heel spurs, back pain and arthritis.  The Counselor concluded that while Mr. Reed had many deficits he would be an excellent candidate for the program.  Based on the contents of the letter from the Office of Vocational Rehabilitation, GCE completed the Disability Paperwork Approval Form on or about July 12, 2011. (Exhibit B).

Prior to the initiation of his employment with GCE, Mr. Reed completed the Employee Self-Identification Form on October 17, 2011. (Exhibit B). Mr. Reed voluntarily stated that he was an individual with a disability and that he was a veteran of Desert Storm/Shield with a separation date of May 5, 1991. (Id.). Mr. Reed listed no accommodation when asked whether GCE needed to make an accommodation in order to improve Mr. Reed's ability to perform his job properly and safely. (Id.). On or about October 20, 2011, Mr. Reed provided a Fit for Duty Evaluation which states that at this time, no active medical problem exists which should affect his ability to perform job.  (Id.).

On November 1, 2011, Mr. Reed began his employment with GCE as a General Maintenance Worker at Ft. Knox in the Road and Grounds Department. Despite Mr. Reed's testimony that he understood his job duties to be limited to operating equipment, which consisted of sitting in the cab of whatever the equipment he was asked to operate (Exhibit C; Reed Deposition 98:11 – 24), the job description for the General Maintenance Worker position for which he was hired directly contemplated a physical labor requirement.  This description, contained in written form, was expressly signed by Mr. Reed on November 1, 2011.  The document describes the position as requiring general grounds repair,

3

electrical and plumbing repairs and other building repair needs, and specifically states the individual must be:

> physically capable of lifting up to 50 pounds. Ability to frequently bend, crouch, walk, climb stairs and ladders, reach above head, sit (to drive) and lift up to 40 pounds regularly. Assist in lifting equipment and moving furniture when necessary. May be required to move or lift alone.

(Exhibit B). Mr. Reed testified that he was given this job description for general maintenance worker at the commencement of this employment.  (Exhibit C at 105:7-25).

Also at the commencement of his employment, Mr. Reed was provided a copy of the Employee Handbook.  Mr. Reed signed an acknowledgement that he received the handbook and that it was his responsibility to read and to comply with the provisions of the handbook.  (Exhibit D; Reed Signed Handbook Acknowledgment). Mr. Reed now testified that he had several issues with the employee handbook, which he claims he addressed with GCE staff.  However, the only issue he raised concerning the Employee Handbook was his necessity to attend doctor appointments for therapy and to get prescriptions (Exhibit C at 106:8-108:2).  Mr. Reed's Personnel file indicates that GCE permitted him to take leave for medical visits multiple times per month over the two years of his employment with GCE.  (Exhibit E; Reed Leave Requests – GCE Production Response RFPD 11).  Still Mr. Reed testified that GCE, or The Ginn Group, or Global Connections employment started harassing him over taking time off to go to VA appointments and they would try to deny his requests.  (Exhibit C at 106:8-108:22). Mr. Reed also seems to claim that two TGG employees, Mr. Matthews and Dennis Vandiver, harassed him because of his alleged disability, by referring to him as "Silent Bob." [DN 62-1 at 4].

On October 30, 2012 Mr. Reed signed his Employee Evaluation that was completed by his TGG supervisor, Mr. Matthews. (Exhibit F.I; Reed Evaluation October 2012).  Mr. Reed received a rating of "1" regarding attendance and a "2" regarding punctuality (a "1" means an employee does not meet GCE's standard of performance and improved performance is required and a "2" means that the

employee meets minimum job requirements.)  (Id.)  Overall, Mr. Reed received a rating of "31/48". (Id.)

On or about December 12, 2012, all GCE employees were provided an Employee Request for Accommodation.  Mr. Reed completed the form describing the requested accommodation as, "No prolonged bending of right knee." (Exhibit G; Mr. Reed Accommodation Request). The request was provided to and signed by Mr. Matthews, Mr. Reed's supervisor. (Id.). This was the first and only Request for Accommodation received by GCE.  Because TGG employees manage all field supervision of GCE employee, GCE presumes that all accommodations are appropriately handled unless GCE is otherwise notified. GCE was not aware of any issue with Mr. Reed's accommodation request.

In the Complaint, Mr. Reed alleged that Mr. Matthews told Mr. Reed to "be careful to not accommodate himself out of a job." (See Compl. [DN 1-2] at ¶36).  In Mr. Reed's deposition, however, Mr. Reed clarified that this purported statement was not made to Mr. Reed individually but rather to a group of employees when Mr. Matthews handed out the accommodation forms (Exhibit C at 117:12 – 17, 118:23-25).  GCE had no knowledge of this purported statement until it was asserted by Mr. Reed in an EEOC Charge of Discrimination that he filed against GCE that has now been repeated by Mr. Reed in this action.  The EEOC issued a Dismissal and Notice of Rights Letter on August 29, 2014. (Exhibit J; EEOC Charge and Dismissal, infra at 6).  Despite the purported statement of Mr. Matthews, Mr. Reed's request for accommodation was approved and he was never terminated from his position with GCE.

On or about October 21, 2013, Mr. Matthews completed and presented Mr. Reed with his annual evaluation. (Exhibit F.II; Reed October 2013 Evaluation).  Mr. Reed was given a "2" for attendance and a "2" for punctuality. (Plaintiff claims in his amended complaint that he received a "1" in the attendance category.)  Mr. Reed refused to sign the evaluation and requested to see the GCE President who was not available at the time.  Subsequent to Mr. Matthews completing the evaluation, GCE became aware that Mr. Matthews may have completed the attendance and punctuality portion of

the evaluation, in part, based on Mr. Reed missing work for scheduled medical appointments.  Mr. Ron Shipley, a supervisor with GCE, met with Mr. Reed afterward and advised him that he would receive a "4" rating for attendance and punctuality.  It is now GCE's practice to have a GCE supervisor review an Employee Evaluation completed by a TGG employee prior to presenting the evaluation to a GCE employee. Mr. Reed's Total Score from this evaluation improved to "35/48" compared to "31/48" from one year prior. (Id.).

On November 12, 2013, Mr. Reed sustained a work-related injury while weed-eating.  Mr. Reed slipped and rolled his ankle resulting in an injury to his right talar dome (a bone in the ankle). Mr. Reed did not return to work at GCE after this date.  Mr. Reed alleges he learned in February 2014 that he was terminated from his employment with GCE.  (See Compl. [DN 1-2] at ¶ 59).  This allegation is interesting in light of sworn testimony Mr. Reed provided on October 1, 2014 in his workers compensation case against GCE wherein he testified that he did not know if he was still employed by GCE and that he had not received any notice that he had been terminated.  (Exhibit H; Reed Workers' Compensation Deposition, at 27).

However, on November 13, 2013, and again on November 22, 2013, GCE received noticed that Mr. Reed was on FMLA leave until further notice. (Exhibit I; Notice of FMLA Leave). Additionally, on January 8, 2014, Mrs. Reed informed Mr. VanCleave that pursuant to opinion of Mr. Reed's orthopedic doctor, Mr. Reed would remain on restrictions keeping him from work.  Mr. VanCleave advised Mrs. Reed to keep him updated on Mr. Reed's Condition.

Mr. Reed filed an EEOC Charge of Discrimination on February 5, 2014, revised on May 14, 2014.  (Exhibit J).  Mr. Reed alleged in EEOC Charge of Discrimination that the actions of discrimination occurred from March 1, 2013 and continued through January 31, 2014, and included: (1) denial of reasonable accommodation for disability and (2) made it difficult to attend his VA appointments and other medical appointments.  On August 29, 2014, the charge was unsubstantiated and a right to sue letter was issued.  (Id.).

Mr. Reed claims that GCE retaliated against him for filing the EEOC complaint, by taking "employment action adverse to Plaintiff, including retaliatory negative scoring on performance evaluations." (Plaintiff Complaint at 109). However, on Mr. Reed's only subsequent evaluation, on May 29, 2014, Mr. Reed was given a score of "35/48," the same score Mr. Reed received on his October 2013 evaluation. (Exhibit F.III; Reed May 29, 2014 Evaluation).

Furthermore, while Mr. Reed's EEOC Charge was still pending, on July 2, 2014, Mrs. Reed informed Mr. VanCleave that Dr. George Quill fitted Mr. Reed for a custom brace to support his ankle and released him to perform "light duty work." (Exhibit K; July 2014 Conversations). In response, Mr. VanCleave asked for his projected date of return, and preparations were made in the system in anticipation of Mr. Reed's return to work at GCE. However, Mr. Reed never returned to work. Accordingly, Mr. Reed claims he was constructively terminated on November 12, 2013, the day of his on-the-job accident. However, despite Mr. Reed's acknowledgment that he was never terminated from GCE (Exhibit C at 186:13-16), Mr. Reed never attempted to return to work at GCE (Id. at 187:2). Despite claiming that he is physically unable to work as a grounds maintenance worker (Id. at 186:9-12), Mr. Reed testified that since November 2013 he has been able to ride his motorcycle, take trips across the state and to the Bahamas, and engaged in numerous other physical activities. (Id. at 241. 246-249).

On March 16, 2015, Plaintiff filed this Complaint against SourceAmerica, GCE, TGG, and others, alleging numerous claims against GCE, including: (1) disability discrimination in violation of the Kentucky Civil Rights Act ("KCRA") under KRS 344.040; (2) negligent hire/retention/supervision; (3) promissory estoppel; (4) failure to protect; (5) civil conspiracy; (6) civil conspiracy (retaliation); in violation of KRS 344.280; (7) retaliation (EEOC), in violation of KRS 344.280; and (8) negligent infliction of emotional distress. For the reasons stated herein, Plaintiff's Complaints against GCE fail and should be dismissed in their entirety.

## **ARGUMENT**

I.      CLAIMS ARISING UNDER THE KENTUCKY CIVIL RIGHTS ACT

Plaintiff's Complaint alleges four violations of the Kentucky Civil Rights Act against GCE: disability discrimination (Count I); civil conspiracy (Count V); civil conspiracy (retaliation) (Count VI); and retaliation – EEOC (Count VII).   For the reasons stated herein, each of Plaintiff's claims fail as a matter of law against GCE.

a.  **PLAINTIFF LACKS EVIDENCE OF A PRIMA FACIE CASE OF DISABILITY DISCRIMINATION UNDER THE KENTUCKY CIVIL RIGHTS ACT – COUNT I**

Mr. Reed first contends that GCE unlawfully discriminated against him based on his disability; that GCE used contrived evaluations to target him for termination; that Mr. Reed was pretextually terminated in November 2013; and that GCE's accommodations were insufficient. For the following reasons, each of Mr. Reed's allegations fail as a matter of law against GCE.

KRS § 344.040(1) makes it an unlawful practice for any employer:

(a) To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex, age forty (40) and over, *because the person is a qualified individual with a disability*, or because the individual is a smoker or nonsmoker, as long as the person complies with any workplace policy concerning smoking. . .

(emphasis added).   The language of the Kentucky Civil Rights Act mirrors the language of the American with Disabilities Rights Act. Therefore, where applicable Plaintiff's claims will be analyzed by referencing the ADA at times.[1]

A plaintiff can prove disability discrimination by "direct evidence that the employer relied on [his] disability in making an adverse employment decision, or if the employer admits reliance on the handicap." *Monette v. EDS Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp, Inc.,* 681 F.3d 312 (6th Cir. 2012). Absent direct evidence of

---

[1] Plaintiff did not raise a separate ADA claim. Any ADA claim that Plaintiff may have had is now time barred.

discrimination, the burden-shifting framework of *McDonnell Douglas Corp. v. Green* applies. *Shoemaker v. E.I. DuPont de Nemours & Co.*, 405 F. App'x 16, 18 (6th Cir.2010) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)); *see also Monette*, 90 F.3d at 1186. Under this approach, "[t]he plaintiff must first establish a prima facie case of discrimination." *Shoemaker*, 405 F. App'x at 18 (*citing Monette*, 90 F.3d at 1186). Plaintiff's burden at the summary judgment stage "is merely to present evidence from which a reasonable jury could conclude that [he] suffered an adverse employment action 'under circumstances which give rise to an inference of unlawful discrimination.'" *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1918)), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.,* 681 F.3d 312 (6th Cir. 2012).

To establish a prima facie case under the ADA or Kentucky Civil Rights Act, a plaintiff must show: (1) he is a member of a protected class (i.e., he is "disabled"); (2) he was otherwise qualified for the position; (3) he suffered an adverse employment action; and (4) the circumstances under which he suffered that action give rise to the inference of unlawful discrimination—or, stated differently, that there is a nexus between the adverse action and his disability. *Id.* (*citing McDonnell Douglas* at 802; *Monette*, 90 F.3d at 1177–86).

Based on this legal precedent, GCE is entitled to judgment as a matter of law with respect to Plaintiff's claim since Plaintiff lacks a prima facie claim of discrimination. GCE does not dispute that Plaintiff is (1) a member of a protected class or (2) was otherwise qualified for the position he held at GCE. In fact, Plaintiff would not have qualified for or been hired in his position at GCE but for his disability. GCE's primary purpose is to help people with disabilities overcome life's challenges by connecting them to meaningful private sector jobs; Mr. Reed was one of the very people GCE was founded to assist. *Supra at 2.* GCE however contests that (3) Mr. Reed suffered an adverse employment action and (4) the circumstances under which Mr. Reed's employment ended gives rise to any inference of unlawful discrimination. Simply, the record is deplete of any evidence that GCE terminated Mr.

Reed, that GCE engaged in any discrimination based on his disability, or that any such termination was due to any disability, or any other link between the two.

First, Mr. Reed was hired "because" he had a disability, in accordance with the AbilityOne Program. *Supra at 2.* Contrary to allegations made by Mr. Reed in the Complaint, he was never terminated by GCE. Mr. Reed expressly stated that he was never told by anyone at GCE that he was terminated. (Exhibit C at 186:13-16). In fact, as of July 2014, GCE, through communication with Mrs. Reed, was making arrangements to have Mr. Reed return to work. (Exhibit K). Additionally, this Court previously determined that Mr. Reed was not constructively terminated, as he does not allege that he quit his employment rather than face termination. [DN 20 at 6-7]. Simply stated, Mr. Reed was injured at work, took indefinite FMLA leave, and never returned to work upon his own choice. Mr. Reed now contends that he is incapable of any employment due to his physical condition (Exhibit C at 186: 4-12). Accordingly, the reason why Mr. Reed has no evidence to support the allegation that he was terminated is because none exists; Mr. Reed was not terminated from his employment.

Second, Mr. Reed's allegations concerning requests for accommodations and insufficient accommodations fail as a matter of law against GCE. Mr. Reed points to the alleged threat of Mr. Matthews, stating "Be careful, you can accommodate yourself right out of a job." (Exhibit C at 117:12-17). However, upon closer examination, Mr. Reed acknowledged that Mr. Matthews made this general statement to a group of individuals while handing out accommodation forms. (Id. at 118:23-25; 119:1-23). Even if this statement was foreshadowing future events, which it was not, GCE had no knowledge of this purported statement, and Mr. Reed is devoid of any proof that GCE took this position, advised Mr. Matthews to assert this opinion, or that Mr. Matthews, as a TGG employee, reported this to GCE. Additionally, Mr. Reed testified in his deposition that GCE did not have any input on what work individual employees did in the field. (Exhibit C at 194:18 – 195:5). Accordingly, GCE did not fail to accommodate Mr. Reed, and there is no inference of discrimination.

Finally, Mr. Reed's allegation that GCE contrived evaluations to target him for termination lacks any basis in law or fact.   A negative performance review does not constitute an adverse employment action unless the performance review itself is tied to or forms the basis of a concrete change in the terms of employment.  *Suyeyasu v. GE Supply*, 2007 WL 789658 (W.D. Ky. Mar. 13, 2007) ("Plaintiff has shown no adverse change in his employment status caused by … his performance review, nor has he shown that other employees did not receive similar reviews. Therefore, this Court finds that [the] performance review does not constitute an adverse employment action."). [See DN 62-1].

At all times relevant hereto, Mr. Reed was, and remained, an at-will employee of GCE.  Mr. Reed's employment evaluations actually improved from 2012 to 2013.  Even though Mr. Reed took many leave days during his employment at GCE, for personal matters and medical issues, Mr. Reed's personnel file is absent of any adverse employment action due to his disability.  Mr. Reed was not demoted, terminated, or reassigned during his employment at GCE.  Even after Mr. Reed was injured and on FMLA leave, GCE assisted with his unemployment, and inquired into his well-being and expected return, in January 2014.  Even after Mr. Reed filed an EEOC charge against GCE in February 2014, GCE still engaged in preparation in July 2014 in anticipation of his return to work.  (Exhibit K). None of these actions constitute adverse employment action.

Even if Mr. Reed can establish that GCE engaged in an adverse employment action, which they did not, Mr. Reed is unable to establish that such an action was taken because of an alleged disability.   Mr. Reed was employed under the AbilityOne program because he was disabled.  There is no evidence that any adverse employment action was taken because of that disability.  Accordingly, Plaintiff is unable to establish the third and fourth prongs required for his discrimination claim.

**b.  PLAINTIFF LACKS SUFFICIENT EVIDENCE OF CIVIL CONSPIRACY-COUNT V**

Mr. Reed Claims that the Defendants engaged in pretextual and corrupt combination of schemes to discriminate against him on the basis of disability, and that through such schemes, Mr. Reed was constructively terminated although he possessed the requirements necessary to hold his position. (Plaintiff Complaint at ¶¶ 90-91). Plaintiff reiterated this position throughout the discovery process.

Plaintiff's claims are barred on three grounds. First, Mr. Reed's claims are barred by the one-year statute of limitations. See KRS 413.140(1)(c). Mr. Reed concedes that he last worked for GCE on November 12, 2013. In fact, his claim is premised on the allegation that conspiracy between the Ginn Group and GCE led to his constructive termination on November 12, 2013. (Plaintiff Complaint, at ¶¶ 37, 91). Accordingly, any cause of action asserted against GCE in Count V must have accrued on or before November 12, 2013. Since Mr. Reed's Complaint was filed on March 16, 2015 – in excess of the one (1) year cause of action accrual – his conspiracy claim in Count V is time-barred pursuant to the statute of limitation set forth in KRS 413.140(1)(c).

Second, in the event that Mr. Reed's claim is not time-barred, Mr. Reed's allegation that the Defendants' "schemes to discriminate on the basis of disability" caused his constructive termination, (Plaintiff Complaint at ¶¶ 90-91), fails because Mr. Reed has failed to establish facts sufficient to state a plausible claim for conspiracy against GCE. *See generally, Guance*, 2015 U.S. Dist. LEXIS 25661 at *3. To establish a claim of civil conspiracy, a plaintiff must prove "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Watts v. Lyon County Ambulance Service*, 23 F. Supp. 3d 792, 811–12 (W.D. Ky. 2014), *aff'd*, 597 Fed. Appx. 858 (6th Cir. 2015), quoting *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co.,* 277 S.W.3d 255, 261 (Ky.Ct.App.2008) (quoting *Smith v. Bd. of Educ. of Ludlow, Ky.,* 264 Ky. 150, 94 S.W.2d 321, 325 (1936)). "A conspiracy is inherently difficult to prove. Notwithstanding that difficulty, the burden is on the party alleging that a conspiracy exists to establish each and every element of the claim in order to prevail." Id., quoting *James v. Wilson,* 95 S.W.3d 875,

896 (Ky.Ct.App.2002) (citing *Krauss Wills Co. v. Publishers Printing Co.,* 390 S.W.2d 132, 134 (Ky.1965)). "In Kentucky, 'civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort.'" *Christian Cnty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.,* 515 Fed.Appx. 451, 458–59 (6th Cir.2013) (quoting *Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V.,* 2010 WL 2696278, at *13 (Ky.Ct.App. July 9, 2010); *see also Hogan v. Goodrich Corp.,* 2006 WL 149011, at *5 (W.D.Ky. Jan. 17, 2006) ("To support a civil conspiracy claim, some underlying tortious act must be taken.")). Thus, a civil conspiracy claim that has no tort to be based upon "cannot survive as a matter of law." *Stonestreet Farm,* 2010 WL 2696278, at *5.

Not only has Plaintiff failed to introduce evidence that GCE discriminated against him on the basis of disability, but this Court has previously ruled that Mr. Reed was not constructively terminated, which is Mr. Reed's only alleged damage. [DN 20].  Further, Mr. Reed's allegation that Defendants conspired to terminate him due to his disability is without any factual support.  Rather, Plaintiff's claims rest solely on Mr. Reed's speculative and sensational interpretation of GCE's employment practices toward disabled individuals under the AbilityOne Program; an employment program which makes a condition of employment that employees be disabled. *Supra at* 2. Additionally, Mr. Reed relies only on mere conjecture that TGG was, or could have been involved in employment decisions concerning GCE employees, or that GCE was aware of, dependent upon, or engaged in some scheme with TGG to discriminate against, and ultimately terminate, Mr. Reed based on his disability.  Even if Mr. Matthews did discriminate against Mr. Reed, Plaintiff has not set forth any evidence that GCE had knowledge of this alleged discrimination, or, that for this conspiracy claim, GCE instructed or permitted such alleged discriminatory practices to occur by Mr. Matthews, a non-GCE employee.

Finally, in the absence of any conspiracy between GCE and TGG, Mr. Reed's only remaining claim of conspiracy against GCE is that it conspired with its own employees to terminate Mr. Reed based on his disability.  However, this claim fails as a corporation, such as GCE, cannot conspire with

its own agents or employees. *See, e.g.*, *Roof v. Bel Brands USA, Inc.*, 2014 U.S. Dist. LEXIS 146818 at *11 – 13 (W.D. Ky. October 15, 2014); *Dunn v. Gordon Food Services, Inc.*, 2010 U.S. Dist. LEXIS 112027 at *5 (W.D. Ky. October 20, 2010). [DN 9-1 at 10].  Accordingly, Mr. Reed's civil conspiracy claim against GCE fails as a matter of law and should be dismissed.

### c.  PLAINTIFF LACKS SUFFICIENT EVIDENCE OF CIVIL CONSPIRACY – RETALIATION - COUNT VI

Mr. Reed's claim under KRS 344.280 of retaliation for requesting reasonable accommodations and opposing unlawful discrimination further fails against GCE.[2]  To state a prima facie case of retaliation under KRS 344.280, a plaintiff must demonstrate that: (1) he engaged in an activity protected by Title VII; (2) the exercise of his civil rights was known by the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Brooks v. Lexington-Fayette Urban* Cnty. Hous. Auth., 132 S.W.3d 790, 803 (Ky. 2004).

Mr. Reed's claims fail against GCE as a matter of law as Mr. Reed fails to produce any evidence supporting elements three (3) and four (4).  Mr. Reed's only specific allegation of retaliation alleges that he was punished for his reasonable accommodations request.  (Plaintiff's Complaint ¶ 98). During Mr. Reed's deposition, he was specifically asked whether any adverse employment action was taken against him for requesting your accommodation.  In response, Mr. Reed testified that he would get more horrible jobs (Exhibit C 192:24 – 193:6); that Ginn Group Employees called him "Silent Bob" (Id. 192:11 – 23); and that that Mr. Shipley disproved of two doctor's visits (Id. at 194:11 – 17). However, Mr. Reed admitted that Gulf Coast did not have any input on what he did in the field (Id. 194:18 - 195:5). Simply, Mr. Reed acknowledge that GCE was not involved in two of the three alleged complaints of retaliation.

---

[2] As the court noted in its September 8, 2015 Order [DN 17] and against in its January 6, 2016 Order [DN 20], Plaintiff appears to proceed on a retaliation claim, as the allegations do not correspondence with a conspiracy claim.

Of the only remaining claim of retaliation against GCE – that Mr. Shipley denied two doctor's visits - Mr. Reed was given numerous days and hours off for doctor's visits/other leave during his employment at GCE.  (Exhibit E).  Mr. Reed did not provide any specifics regarding those two denials and how they were related to any discriminatory act of GCE.  Specifically, after Mr. Reed's December 2012 request for accommodation, Mr. Reed was granted sixteen (16) appointments/leave days during work hours. (Id.).  Even if true that Mr. Reed was denied two requests for medical visits, these denials are insignificant in light of the numerous other requests granted, and Mr. Reed lacks any evidence that such denials were related to his request for accommodation.  Accordingly, Mr. Reed fails to meet elements three (3) and four (4) to establish a retaliation claim against GCE.

### d.  PLAINTIFF LACKS SUFFICIENT EVIDENCE OF RETALIATION – EEOC COMPLAINT IN VIOLATION OF KRS 344.280 - COUNT VII

Mr. Reed alleges that GCE retaliated against him for filing the EEOC compliant (a protected activity) by taking adverse employment action, including retaliatory negative scoring on performance evaluations. (See Compl. [DN 1-2] ¶¶ 107–110.)  GCE does not dispute that Plaintiff engaged in a protected activity known by GCE; however, GCE took no adverse employment action against Mr. Reed as a result of his EEOC Complaint.

Mr. Reed filed his EEOC complaint in February 2014. (Exhibit K).  Mr. Reed was on FMLA leave at this time.  In May 2014, Mr. Reed's evaluation revealed the same score as was provided on his October 2013 evaluation, (Exhibit F), both of which were an improvement from his November 2012 Evaluation (Id.).  Even if Mr. Reed's performance review was less favorable than the review in October 2013, a negative performance review does not constitute an adverse employment action unless the performance review itself is tied to or forms the basis of a concrete change in the terms of employment.  *Suyeyasu v. GE Supply*, 2007 WL 789658 (W.D. Ky. Mar. 13, 2007).  Here it certainly was not.  In fact, while Mr. Reed's EEOC Complaint was still pending, GCE engaged in email

correspondence with Mrs. Reed in July 2014 to inquire as to when Mr. Reed would be able to return to work. (Exhibit K). As a result, GCE took steps in anticipation of Mr. Reed's return to GCE. (Id.).

Despite GCE's steps in anticipation of Mr. Reed's return to work, Mr. Reed testified that due to his physical condition he never returned to his employment at GCE. In August 2014, Mr. Reed's EEOC Complaint was unsubstantiated. (Exhibit J). At no point after Mr. Reed filed an EEOC Charge did GCE take any adverse employment action towards him. To the contrary, GCE took steps to accommodate Mr. Reed's continued employment once medically fit. Mr. Reed chose not to take advantage of this opportunity. Accordingly, Mr. Reed has failed to offer any evidence in support of his EEOC Retaliation claim, and it should be dismissed against GCE.

## II.   PLAINTIFF'S REMAINING NEGLIGENCE CLAIMS FAIL AS MATTER OF LAW

Plaintiff's remaining claims against GCE – Negligent hiring/ retention/ supervision (Count II); Failure to Protect (Count IV); and Negligent Infliction of Emotional Distress (Count VIII) - similarly fail as a matter of law.

### a.   GCE DID NOT HIRE, RETAIL OR SUPERVISE DEFENDANT MATTHEWS – COUNT II

Plaintiff claims that TGG and/or GCE negligently hired, retained, and/or supervised Defendant Matthews, who allegedly subjected Reed to "harassment, discrimination, and bullying." (See Compl. [DN 1-2] ¶¶ 68–74.). Under Kentucky law, "[t]he threshold issue of a negligent hiring, training, or supervision claim is whether the accused tortfeasor was actually an employee of the named defendant." *Southard v. Belanger*, 966 F. Supp. 2d 727, 744 (W.D. Ky. 2013).

Both Plaintiff and Defendant TGG acknowledge that Defendant GCE did not employ or supervise Defendant Matthews. (See Plaintiff's Complaint at ¶ 36; Exhibit C at 109:1-15; [DN 62-1 at 4]). Accordingly, Mr. Reed fails to allege sufficient facts to meet the threshold issue of a negligent hiring, retention or supervision claim against GCE for the actions of Defendant Matthews.

**b.   PLAINTIFF LACKS EVIDENCE THAT GCE FAILED TO PROTECT HIM –
COUNT IV**

Plaintiff claims that GCE violated its obligation to ensure a safe atmosphere for its employees by tolerating Defendant Matthew's, Mr. Reins' and Mr. Vandiver's behavior and was on notice of it. GCE is not aware of any recognized cause of action entitled "Failure to Protect".  Therefore, Plaintiff has failed to state a claim upon which relief may be granted with respect to Count IV.

To the extent there is such a common law negligence claim, Mr. Reed fails to assert any facts or evidence that GCE breached any such duty or that Mr. Reed was damaged by any alleged breach.

In Mr. Reed's deposition, he claims that Mr. Matthews, Mr. Reins and Mr. Vandiver harassed him due to PTSD, including calling him "Silent Bob." (Exhibit C at 108:3-25).  To establish a hostile work environment claim, the employee must show that the conduct in question was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, that he subjectively regarded it as abusive, and that the employer tolerated or condoned the situation, or knew or should have known of the alleged conduct and did nothing to correct the situation.  *Smith v. Leggett Wire Co.,* 220 F.3d 752 (6th Cir. 2000).  The conduct alleged must be "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Meyers v. Chapman Printing Co*., 840 S.W.2d 814, 821 (Ky. 1992) (quoting *Meritor Sav. Bank v. Vinson*, 477 U.S. 57 (1986)). *See also Doss v. St. Claire Med. Ctr., Inc*., 2014 WL 1093199, at *4 (E.D. Ky. Mar. 14, 2014).

The alleged action was neither sufficiently severe or pervasive enough to be actionable nor did GCE know of, or condone, the alleged conduct.  This alleged conduct, which was not reported to GCE by Mr. Reed despite having meetings with GCE's HR director.  Importantly, in Mr. Reed's October 2013 evaluation, Mr. Reed made no complaints about harassment in the Employee Comment Section. (Exhibit F).

Even if being called "Silent Bob" relates to his disability, which it does not, it does not remotely approach the standard to make out a claim for hostile work environment.  Other than mere conjecture, Mr. Reed fails to produce any evidence that GCE knew of these incidents, or that GCE condoned or failed to resolve this conduct.  Further, Mr. Reed does not allege that these comments adversely affected his employment, caused him to miss additional days of work while employed, or caused him any financial loss, or any other actual injury.  Accordingly, Mr. Reed's claim for Failure to Protect fails as a matter of law.

### c. PLAINTIFF LAKCS SUFFICIENT EVIDENCE SUPPORTIVE OF NEGLIGENT INFLECTION OF EMOTIONAL DISTRESS – COUNT VIII

Mr. Reed next alleges that GCE "negligently failed to inform the Plaintiff of his employment termination/status." (See Compl. [DN 1-2] at ¶ 113.).  Plaintiff also claims that the stress and pain resulting from his constructive discharge caused him to be admitted to the mental health ward and that he has difficulty leaving the house other than for medical appointments. (Plaintiff Interrogatory Response No. 11).

To establish a claim of negligent infliction of emotional distress in Kentucky, Plaintiff must establish the basic elements of negligence and must also show, by "expert medical or scientific proof," "'severe' or 'serious' emotional injury," i.e., one that "a reasonable person, normally constituted, would not be expected to endure." *Osborne v. Keeney*, 399 S.W.3d 1, 17-18 (Ky. 2012).  Failure to establish any of these elements is fatal to the claim. *Blust v. Berea Coll.*, 431 F. Supp. 2d 703, 704 (E.D. Ky. 2006) (citing *M & T Chems. Inc. v. Westrick*, 525 S.W.2d 740, 741 (Ky. 1974)). Thus, a complaint asserting a NIED claim must allege facts that if proven would establish each element of the claim, see *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) and conclusory statements without supporting factual allegations will not withstand a motion to dismiss, see *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).

Plaintiff's claim fails on three grounds.  First, as previously stated, Mr. Reed was not terminated from his employment with GCE.  Mr. Reed testified that he never received any communication from GCE that he was terminated.  Mr. Reed advised GCE that he was taking FMLA following his work-related injury.  Communication between GCE and Ms. Reed in January 2014 and July 2014 inquired into Mr. Reed's medical status so that they could continue Mr. Reed's employment once he was physically able to resume employment. (Exhibit K).  As of July 2014, GCE anticipated Mr. Reed's return to employment.  Second, the fact that Mr. Reed willingly chose to never return to his employment with GCE does not constitute some breach on GCE's behalf to keep Mr. Reed updated of his employment status.  Rather, GCE initiated contact to inquire into Mr. Reed's return.

Finally, Mr. Reed fails to introduce any evidence supporting that GCE's breach of this duty, if there was in fact a breach, caused Mr. Reed's alleged emotional distress.  Mr. Reed claims that GCE's failure to inform him of his termination/employment status caused him such emotional distress that he is unable to leave the house except for medical appointments.  However, in his deposition, Mr. Reed stated that since November 2013 he purchased a motorcycle which he drives occasionally; he joined the American Legion Riders; he goes to the flea market with his wife; he has traveled to Murray State University numerous times; he has taken trips throughout Kentucky, Virginia, and took a cruise in the Bahamas in July of 2017.  (Exhibit C at 241 – 242; 256 – 249).  When discussing reasons why he did not like to go out, Mr. Reed repeatedly stated it was because he needed to use a scooter, but not once mentioned that GCE's alleged failure to notify him of his employment status caused such severe emotional distress to prevent him from leaving the house.  (Id.).

Accordingly, Mr. Reed's claims are factually inconsistent and fail to meet the standard necessary to recover on a negligent infliction of emotional distress claim.

## III.   PLAINTIFFF LACKS SUFFICIENT EVIDENCE SUPPORTIVE OF PROMISSORY ESTOPPEL CLAIM - COUNT III

Mr. Reed next contends that GCE produced policies and procedures which insured that all GCE employees would be protected in the workplace; that these promises induced Mr. Reed to accept employment at GCE; and that Mr. Reed relied on these promises to his detriment.  (See Compl. [DN 1-2] ¶¶ 75–81.).  While GCE does not dispute that it maintains policies to safeguard its employees from danger and discrimination, amongst other safeguards, GCE disputes that it made these "promises to induce" Mr. Reed's employment, and that Mr. Reed was induced by these promises to accept employment, i.e. that Mr. Reed materially changed his position in reliance on these statements.  As Mr. Reed has not set forth any proof to the contrary, Mr. Reed's promissory estoppel claim fails as a matter of law.

In Kentucky, the elements of promissory estoppel are: "(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." Harris v. Burger King Corp., 993 F. Supp. 2d 677, 691 (W.D. Ky. 2014) (quoting C.A.F. & Assocs., LLC v. Portage, Inc., 913 F. Supp. 2d 333, 350–51 (W.D. Ky. 2012)).  In Kentucky, "promissory estoppel can be invoked when a party reasonably relies on a statement of another and *materially changes his position in reliance on the statement." Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc*., 113 S.W.3d 636, 642 (Ky. Ct. App. 2003) (emphasis added).

In *Jackson v. JB Hunt Transport, Inc.,* 384 S.W.3d 177, 184–85 (Ky. App. 2012), the Court addressed this issue in the context of an at-will employee alleging that he reasonably relied on a self-reporting provision as to the company's drug policy (Id.).  Therein, Jackson alleged that by reporting drug-use he would retain job security.  (Id.).  The Court ruled that Jackson's promissory estoppel claim failed on three grounds, most importantly that Jackson's position did not change, even if the policy was the kind of promise giving rise to a promissory estoppel claim, because Jackson remained an at-will employee at all times.  (Id.).  Importantly, the Court stated:

> Before self-reporting, Jackson was J.B. Hunt's at-will employee who kept his drug use a secret from both his employer and the United States Department of Commerce, which issued his commercial driver's license. After self-reporting, Jackson remained J.B. Hunt's at-will employee who admitted using cocaine. In other words, Jackson did not give up employment security by self-reporting—as an at-will employee, he had no employment security to begin with. His position relative to J.B. Hunt did not change.

*Id.* Mr. Reed's allegations are even more convoluted than Jackson's, as Mr. Reed fails to identify any specific guidelines that GCE breached or any actions GCE failed to take to protect him, or how Mr. Reed's position changed any time after he relied on the "promises."

Presumably, the policies referred to by Mr. Reed which induced his employment, were provided in the Employee Handbook which he signed prior to his employment.  Yet, despite claiming that he had many issues with the employee handbook prior to his employment, when asked about these provisions during his deposition, Mr. Reed was silent as to any promises made by GCE that they would protect him in the workplace, or to any other specific promises GCE made to induce his employment (Exhibit C at 106:4 - 108:25).  Rather, from Mr. Reed's testimony, he contacted GCE and later accepted this position because this type of work offered by GCE was hard to find for disabled veterans:

**Q.     How did you find out about Gulf Coast?**

A.     I was on unemployment, because I had been laid off at Certified when Willie Holbert sold out. Then the veteran's employment guy at workforce development, he's like, "Well, there's a company getting a contract on Fort Knox. They're -- they're looking for people, especially disabled people that have a CDL. They said that's really hard to find." So they put me in touch with -- I think her name's Laketra Williams. She's another individual that works for the state workforce development, but she specializes in the disabled thing. So I talked to her twice. I had to go get documentation of the disabilities from the VA; bring it to her. She forwarded that with my other stuff, like my CDL, a copy of that, to Gulf Coast Enterprises, who wound up hiring me.

(Exhibit C at 96:4 – 22).  Even if Mr. Reed was induced to accept employment from GCE due to its promises, as he broadly claims, Mr. Reed fails to produce any evidence of how GCE breached these promises and that his position was materially changed as a result.  Instead Mr. Reed only offers conclusory statements that GCE failed to protect him and failed to take appropriate action to protect

him.  Presuming that Mr. Reed is referring to retaliation for making requests for accommodation, as previously addressed, Plaintiff has failed to offer any evidence that GCE was involved with, knew, or had reason, to know of such retaliation, and that GCE was not involved in Mr. Reed's on-site job accommodations. (Exhibit C at 191 – 194).  If we take Plaintiff's allegations to mean that he was constructively terminated in November 2013, this Court has already determined that he was not.  In any event, Mr. Reed remained an at-will employee at all times, and he was not demoted or suffer any other adverse employment consequence after he acted in reliance on the guidelines.

Other than Mr. Reed's conclusory allegations contained in his Complaint, the record is devoid of any reference to such reliance and his deposition testimony is silent on this matter.  Instead, the record shows that Mr. Reed was unemployed for a year before GCE hired him as an at-will employee, that Mr. Reed accepted this employment because such employment was hard to find for an individual in his condition, that Mr. Reed was at all times hereto an at-will employee, that Mr. Reed's position did not change at any time relevant hereto due to any reliance on GCE, and that Mr. Reed suffered no damage as a result of said reliance.  Instead, even as of July 2014, GCE made preparation for Mr. Reed's return to work.  However, Mr. Reed opted not to return.  Mr. Reed has failed to provide a scintilla of evidence to support this claim.  Accordingly, GCE is entitled to judgment as a matter of law with respect to Mr. Reed's promissory estoppel claim.

## CONCLUSION

Plaintiff's allegations of discrimination are ironic given they are contrary to the very purpose and mission of GCE.  Plaintiff has been unable to unearth any evidence in support of his claims as the record is void of any material fact that Mr. Reed was terminated, discriminated against, or retaliated against due to any disability.  Nor is there any evidence that GCE engaged in any negligent activity as claimed by Plaintiff.  Further, Plaintiff failed to set forth any facts sufficient to support claims of civil conspiracy, promissory estoppel and negligent infliction of emotional distress.  As a result of the

foregoing, GCE respectfully requests this Court enter summary judgment in favor of GCE and dismiss

Plaintiff's Complaint.

Respectfully submitted,

/s/ *Craig L. Johnson*
Craig L. Johnson
Gregory L. Finch
WHONSETLER & JOHNSON, PLLC
11901 Brinley Avenue
Louisville, KY 40243
Phone: (502) 895-2297
Fax: (502) 895-9764
johnson@whonsetler.com
*Counsel for Defendant, Gulf Coast Enterprises*

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2018 a copy of the foregoing was filed electronically through the ECF system, which will send a notice of electronic filing to:

Samuel G. Hayward, Esq.
Samuel G. "Chip" Hayward, Jr.
ADAMS HAYWARD & WELSH
4036 Preston Highway
Louisville, KY 40213
samuelghayward@hotmail.com
*Counsel for Plaintiff*

Sean Ragland, Esq.
Nicholas R. Hart, Esq.
Phillips Parker Orberson & Arnett, PLC
716 West Main Street, Suite 300
Louisville, KY 40202
sragland@ppoalaw.com
nhart@ppoalaw.com
*Counsel for The Ginn Group, Inc.*

/s/ Craig L. Johnson
Craig L. Johnson, Esq.