# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

CIVIL ACTION NO. 3:15-cv-00295-JHM

ROBERT RAY REED                                                        PLAINTIFF

v.

GULF COAST ENTERPRISES, et al.                                DEFENDANTS

### MEMORANDUM OPINION & ORDER

This matter is before the Court on motions for summary judgment by defendants Gulf Coast Enterprises ("GCE") (DN 63) and The Ginn Group, Inc. ("Ginn Group"). (DN 62.) Fully briefed, these matters are ripe for decision.

### I. BACKGROUND

This case arises out of plaintiff Robert Ray Reed's employment with GCE. According to the complaint, from November 2011 to November 2013, Reed, who is disabled, was employed by GCE. (Pl.'s Compl. [DN 1-2] ¶¶ 2–3, 17–18, 37.) Reed suffered an on-the-job injury to his ankle on November 12, 2013, and he has not worked since. (*Id.* ¶¶ 37, 45.) Throughout his employment, Reed alleges that he was denied accommodations that he requested, subjected to harassment, placed in dangerous working conditions, and ultimately terminated because of his disability. On March 16, 2015, Reed filed a complaint in state court against four defendants: GCE, who hired Reed; the Ginn Group, who employed Reed's supervisors; Source America, a nonprofit agency who subcontracted with GCE and the Ginn Group in administering the federal AbilityOne Program; and Gary Matthews, an employee of the Ginn Group and Reed's supervisor.[1] Reed asserted claims for (1) disability discrimination in violation of the Kentucky Civil Rights Act ("KCRA"), KRS § 344.040; (2) negligent hiring/retention/supervision; (3)

---

[1] Matthews has not been served and has never made an appearance in this action.

promissory estoppel; (4) "failure to protect;" (5) civil conspiracy; (6) "civil conspiracy (retaliation)" in violation of KRS § 344.280; (7) "retaliation (EEOC)" in violation of KRS § 344.280; and (8) negligent infliction of emotional distress. (*Id.* ¶¶ 60–118.)

On April 20, 2015, SourceAmerica, GCE, and the Ginn Group removed the case from state court to this Court. (DN 1.) SourceAmerica later moved for either judgment on the pleadings or summary judgment as to all claims asserted against it. (DN 9.) After ordering briefing on whether this Court possessed subject matter jurisdiction (DN 17), the Court determined that the parties were diverse so as to give this Court jurisdiction and granted SourceAmerica's motion as to all claims against it. (DN 20.) The Ginn Group later moved for summary judgment prior to the close of discovery. (DN 50.) The Court denied that motion but granted the Ginn Group leave to refile its motion at the close of discovery. (DN 56.) GCE and the Ginn Group have now filed motions for summary judgment, seeking dismissal of all the plaintiff's remaining claims. (DN 62, 63.)

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies this burden, the non-moving party must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some

"metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to show that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### A. COUNT I - DISABILITY DISCRIMINATION

Both remaining defendants have moved for summary judgment as to Reed's claim for disability discrimination under the KCRA. Under KRS § 344.040, "[i]t is an unlawful practice for an employer: (1) to fail to or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual . . . because the person is a qualified individual with a disability." KRS § 344.040(1)(a). Because the language of the KCRA mirrors that of federal anti-discrimination laws, courts interpret the Kentucky Act consistently therewith. *See Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003).

Reed's complaint and response to the motions for summary judgment assert two different theories of discrimination. He first argues that he was terminated because of his disability. Reed does not contest that this theory relies on indirect evidence of discrimination. "To make out a *prima facie* case of employment discrimination through indirect evidence . . . a plaintiff must show that 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Whitfield v. Tenn.*, 639 F.3d 253, 258–59 (6th Cir. 2011) (quotations omitted).

GCE and the Ginn Group argue that Reed cannot make out a prima facie case, as no adverse employment action was taken against him.[2] "An adverse employment action is a materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008) (quotations omitted). Reed points to his termination as evidence of adverse action taken against him. However, the defendants have submitted evidence showing that Reed was never terminated. The record shows that Reed suffered a work-related injury to his ankle while weed eating on November 12, 2013. (Dep. Robert Reed [DN 63-12] at 28:19–29:4.) He then filed for leave under the Family and Medical Leave Act beginning on November 13, 2013. (FMLA Documents [DN 63-13] at 1.) His medical records show that on December 11, 2013, he was directed by medical personnel not to return to work indefinitely due to the severity of his injury. (*Id.* at 5.) On July 2, 2014, Reed's wife notified GCE that Reed was now permitted to return to work, so long as he would be restricted to sedentary work until a brace may be made for him. (Emails [DN 63-15] at 1.) Bill VanCleave, the human resources manager at GCE, sought to find out from Mrs. Reed when the brace would be ready so that Reed could return to work. (*Id.*) Mrs. Reed responded that it would take a few weeks and stated that Reed "wasn't 'released'" but remains "on very light duty." (*Id.*)

Reed disputes that this evidence shows that he remained an employee of GCE and contends that he was discharged on November 12, 2013. However, he only points to his own affidavit, submitted with his response to the motions for summary judgment, in support of this argument. In this affidavit, Reed states that he was told by VanCleave in 2014 to "not come into work anymore and to not call him," thus terminating his employment. (Reed Aff. [DN 67-1] ¶ 52.) However, this affidavit contradicts other evidence in the record showing that Reed was still

---

[2] The Ginn Group also contests that Reed suffers from a legally cognizable disability.

employed by GCE beyond the date of his injury. For example, on July 21, 2014, Reed applied for worker's compensation for his work-related injury. (Worker's Compensation Application [DN 70-4] at 1–5.) In that application, Reed twice indicated that he was still employed by GCE. (*Id.* at 3, 4.) Further, when asked if anyone at GCE ever told him he was terminated or provided him documents indicating he was no longer employed, he said that neither had ever happened. (Dep. Reed [DN 63-5] at 186:13–19.) "[A] party should not be able to create a disputed issue of material fact where earlier testimony on that issue by the same party indicates that no such dispute exists." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006). Reed's affidavit makes no attempt to explain why the information in the worker's compensation application or his deposition is actually not true. Instead, it simply contradicts these prior statements. Therefore, the Court will not allow Reed to create a factual dispute as to whether he was terminated. The record establishes that Reed remained employed by GCE following his November 12, 2013 injury. As such, Reed cannot use his "termination" as evidence of an adverse employment action to prove his prima facie case, as he was never actually terminated.

Reed also argues that he was denied requests for accommodations because of his disability.[3] Reed argues that he repeatedly requested accommodations, both before and after

---

[3] Reed argues in his response that the failure to accommodate his disability is evidence of an adverse employment action taken against him. While "failure to accommodate claims can be asserted under either direct or indirect evidence theories," *Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 689 (E.D. Ky. 2014), the Court finds that there is too much analytical tension in considering whether the denial of accommodations in this case was an adverse employment decision. To succeed on an indirect evidence claim, Reed would have to prove that he "suffered an adverse employment decision *because of* the disability." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 706–07 (Ky. 2004) (citations omitted) (emphasis added). *See also Rosebrough v. Buckeye Valley High School*, 582 F. App'x 647, 652 (6th Cir. 2014) ("a plaintiff does not satisfy [the adverse employment action] element unless she can show that her disability (or perceived disability) was the 'but-for' cause of the employment decision") (citing *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 318 (6th Cir. 2012) (en banc)). When an employee requests an accommodation, the decision to either grant or deny the accommodation is inherently based on the employee's alleged disability: the request is either granted because the employer finds the employee has a sufficient disability to merit an accommodation, or it is denied because the employer concludes that he or she was not disabled. Thus, the decision to grant an accommodation will almost always be made *because of* a disability, unless it is based on some unrelated or impermissible factor like race. This framework only breeds confusion for Reed's claim: he alleges he was entitled to an accommodation because he was disabled, but he was denied the

suffering his on-the-job injury in November 2013, but was routinely denied. The Sixth Circuit has noted that "an employer's failure to offer a reasonable accommodation necessarily involve[s] direct evidence (the failure to accommodate) of discrimination." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). A direct evidence claim "jettison[s] the familiar *McDonnell Douglas* burden-shifting framework applicable in indirect-evidence cases" and applies the following framework:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Kleiber*, 485 F.3d at 869 (citations omitted).

The Court will begin with whether Reed has met his second burden, as that will narrow the Court's focus on the remaining issues. "[T]o overcome summary judgment, the plaintiff generally must identify the specific job he seeks and demonstrate that he is qualified for that position." *Id.* at 870. Reed has met his burden on this issue, as he testified that he was otherwise qualified to be on the "spraying crew," in which one would "basically drive like a tractor, and you spray a defoliant . . . and basically, even if something's kind of tough territory, you could sit on a little four – four-wheeler that's got a sprayer, and just ride along fence line or parking lot and spray things . . ." (Dep. Reed [DN 67-2] at 146:2–3, 146:19–22.) Reed testified that he had been given the necessary books and studied them to prepare for this position, and that he was physically capable of performing this task. (*Id.* at 146:6–7.) However, he was passed over for

---

accommodation also because he was disabled. As such, Court will instead consider whether he has a claim under a direct evidence theory.

this job.  (*Id.* at 146:13–18.)  Neither defendant challenges this testimony.  Thus, taking the evidence in a light most favorable to Reed, the Court finds that he has met his burden of identifying a specific position for which he was otherwise qualified that would have accommodated his disability.

However, Reed has only identified such a position for the time period *before* his November 12, 2013 injury.  While Reed states in his affidavit that he "could have returned to work if they would have offered me reasonable accommodations" after his injury (Reed Aff. [DN 67-1] ¶ 54), he admitted in his deposition that he is currently unable to work.  (Dep. Reed [DN 68-1] at 1:3–18.)  Further, he points to no specific jobs that he sought or could have sought after his injury.  Thus, Reed has not met his burden for the time period after his injury.  This distinction matters, as the Court need not consider whether Reed was disabled after his injury.  Instead, the Court will only consider whether Reed was disabled when he made the request to be placed on the spraying crew, which occurred before he was injured in November 2013.

GCE does not dispute that Reed is disabled.  However, because the Ginn Group contests this point, the Court must determine if Reed has met his burden.   As the Ginn Group points out, federal courts in Kentucky have declined to apply the definition of "disability" as found in the Americans With Disabilities Act Amendments Act of 2008 ("ADAAA") when deciding claims raised only under the KCRA and will instead apply the definition found in KRS § 344.010(4).  *See Azzam v. Baptist Healthcare Affiliates, Inc.*, 855 F. Supp. 2d 653, 657 n. 2  (W.D. Ky. 2012).[4]  Under Kentucky law, "disability" is defined as either "[a] physical or mental impairment

---

[4] However, as our sister court noted in *Sanders v. Bemis Co., Inc.*, there is "one Kentucky Court of Appeals decision which cites ADAAA provisions" on the appropriate definition of disability. 2017 WL 3401277, at *5 n. 3 (E.D. Ky. Aug. 8, 2017) (citing *Tanner v. Jefferson Cty. Bd. Of Educ.*, 2017 WL 2332681, at *2 (Ky. Ct. App. May 26, 2017)). However, the *Sanders* court declined to interpret the KCRA as congruent with the ADAAA "until the Kentucky Supreme Court or General Assembly speaks on the issue," and the Court will do the same. *Id.* (quotations omitted).

that substantially limits one (1) or more of the major life activities of the individual; [a] record of such an impairment; or [b]eing regarded as having such an impairment." KRS § 344.010(4).

Reed has met his burden on this issue. The most relevant evidence is Reed's initial employment records with GCE. (DN 63-4.) In those files, GCE "approved" Reed's disability, noting he suffered from a mental illness and musculoskeletal system and connective tissue issues. (*Id.* at 12.) Notably, those files define "disability" identically to how KRS § 344.010(4) defines the term, stating that an "[i]ndividual with a Disability means any person who (1) has a physical or mental impairment [that] substantially limits one or more of such person's major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment." (*Id.* at 7.) And while Reed was deemed by a medical provider as having "no active medical problems . . . which should affect ability to perform job," (*id.* at 11), his initial employee review states that Reed "will require specific accommodations not readily provided in a competitive work environment." (*Id.* at 13.) At the very least, Reed has offered proof that the defendants regarded him as having an impairment that would limit his ability to work. *See Schave*, 127 S.W.3d at 592 (working is a major life activity).

Reed has offered sufficient proof that he was disabled under KRS § 344.010(4) and that he was qualified to be on the "spraying crew," a job that he could perform despite his disability. *See Kleiber*, 485 F.3d at 869 ("a reasonable accommodation . . . may include reassignment to a vacant position"). He has testified that he requested this accommodation but was denied by the defendants. (Dep. Reed [DN 67-2] at 145:5–146:18.) The defendants have not offered evidence as to whether this accommodation would have imposed an undue hardship on them. Thus, the Court finds that neither defendant has met their burden under the direct evidence framework.

GCE makes one final argument in favor of summary judgment. It notes that Reed conceded that any decisions about where employees would be assigned were made by the Ginn Group and its agents, not GCE. (Dep. Reed [DN 63-5] at 194:18–195:5.) But as the Court noted in a previous order, liability under the KCRA and ADA depends on the plaintiff and defendant being in an employer-employee relationship. (DN 56, at 3) (citing *Sanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x 488, 491 (6th Cir. 2011)). There are different theories under which a defendant can be considered an employer, including the joint employer theory, in which "one defendant has control over another company's employees [so that] the two companies are acting as a 'joint employer' of those employees." *Swallows v. Barnes & Nobles Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997). Issues of fact remain as to what type of relationship each defendant had with Reed, as the parties have not developed the record on this point.

Because there is a genuine dispute as to whether Reed was denied the accommodation he requested, the Court **DENIES** the motions for summary judgment by both parties as to Count I.

### B. COUNT II – NEGLIGENT HIRING, SUPERVISION, AND RETENTION

Count II alleges that the Ginn Group and/or GCE were negligent in its hiring, supervision, and retention of Gary Matthews, Reed's supervisor who was employed by the Ginn Group. In its motion for summary judgment, GCE argues that it cannot be liable, since both Reed and the Ginn Group concede that GCE was not Matthew's employer. (Dep. Reed [DN 63-5] at 109:1–15; Def.'s Mot. for Summ. J. [DN 62-1] at 4.) "The threshold issue of a negligent hiring, training, or supervision claim is whether the accused tortfeasor was actually an employee of the named defendant." *Southard v. Belanger*, 966 F. Supp. 2d 727, 744 (W.D. Ky. 2013) (citing *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998)). The evidence here

9

shows Matthews was not employed by GCE. Therefore, GCE's motion for summary judgment as to Count II is **GRANTED**.

The Ginn Group does not make an argument in favor of summary judgment as to this claim in the present motion, other than generally asking for dismissal of all claims against it. It did argue in its prior motion for summary judgment that "there has been no evidence developed of any kind in this case to support any negligent hiring or retention claim against The Ginn Group." (DN 50-1, at 4.) But it has not incorporated this argument into its current motion, and even if it had, there are factual disputes as to whether the Ginn Group adequately supervised its employees and how it handled requests for accommodations. Therefore, the Ginn Group's motion for summary judgment as to Count II is **DENIED**.

### C. COUNT III – PROMISSORY ESTOPPEL

GCE has moved for summary judgment as to Count III, which asserts a claim of promissory estoppel.[5] In Count III of his Complaint, Reed asserts that GCE induced him to accept employment by promising him that it would "protect its employees" in the workplace. (Pl.'s Compl. [DN 1-2] ¶¶ 75–81.) "Promissory estoppel can be invoked when a party reasonably relies on a statement of another and materially changes his position in reliance on the statement." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 642 (Ky. Ct. App. 2003). Under Kentucky law, the elements of promissory estoppel are: "(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise."

---

[5] Reed has failed to assert a claim for promissory estoppel against the Ginn Group, as nowhere in Count III is the Ginn Group mentioned. Although Count III does incorporate all of the complaint's prior assertions of fact, there are no factual assertions elsewhere in the complaint that would support a claim against the Ginn Group. Further, Count III makes specific references to GCE as being the entity that made the alleged promises at issue. (Pl.'s Compl. [DN 1-2] ¶¶ 76–79) ("That Defendant Gulf Coast made these promises . . .").

*Harris v. Burger King Corp.*, 993 F. Supp. 2d 677, 691 (W.D. Ky. 2014) (quoting *C.A.F. & Assocs., LLC v. Portage, Inc.*, 913 F. Supp. 2d 333, 350–51 (W.D. Ky. 2012)).

The Court will grant GCE's motion. The only "promise" Reed points to in his response is the promise to provide reasonable accommodations, which he alleges was made during the hiring process. (Reed Aff. [DN 67-1] ¶ 6.) But Reed's affidavit, his only proof on this matter, states that this promise was made *after he was hired*. (*Id.* ¶¶ 4, 6) ("Once I was hired, and attended the meetings before my employment . . . I was told during these meetings that if I ever needed accommodations, that I could just ask my supervisor and accommodations could be worked out for me"). Reed lacks proof that the promise of accommodations induced him to accept employment with GCE. While he cites generally to GCE's employment handbook, which stated that the company's "purpose is to operate a successful business which will provide meaningful employment to person[s] with disabilities," (Pl.'s Resp. [DN 67] at 17), a claim for promissory estoppel requires "that an actual promise was made, [and] that the promise was *clear, definite, or unambiguous*." *Street v. U.S. Corrugated, Inc.*, 2011 WL 304568, at *6 (W.D. Ky. Jan. 25, 2011) (citing 31 C.J.S. Estoppel and Waiver § 117) (emphasis added). This alleged statement in the handbook does not meet this standard. Therefore, the motion for summary judgment as to Count III is **GRANTED**.

### D. COUNT IV – FAILURE TO PROTECT

Both defendants move for summary judgment as to Count IV for failure to protect. GCE argues that there is no recognized cause of action for "failure to protect," and instead analyzes the claim as if it were either a negligence claim or a hostile work environment claim under the KCRA. The Ginn Group also analyzes the claim as if it were a hostile work environment claim. Reed then responds to GCE's motion using the framework of a negligence claim, but responds to the Ginn Group's motion using a hostile work environment framework. The complaint alleges that GCE "was under an obligation to maintain a safe atmosphere for employees" but that Ginn

11

Group employees "engaged in a course of conduct that was abusive, discriminatory, and tortious" towards Reed and that the defendants "did not act to protect Plaintiff to his detriment." (Pl.'s Compl. [DN 1-2] ¶¶ 83, 85, 87.) However, Reed also explicitly states that the defendants failed to protect "his constitutional rights." (*Id.* ¶ 88.) The Court will examine both theories.

A hostile work environment claim under the KCRA "is analyzed like similar federal claims under the *McDonnell Douglas* framework." *Strange v. Stryker Sales Corp.*, 2015 WL 3463629, at *7 (E.D. Ky. June 1, 2015) (citations omitted). To survive a motion for summary judgment, "Plaintiff must demonstrate five elements: (1) he was a member of the protected class (disabled . . . ); (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected class; (4) the harassment unreasonably interfered with his work performance; and (5) defendant either knew or should have known about the harassment and failed to take corrective measures." *Id.* (quotations omitted). The Supreme Court has noted that "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond" the purview of anti-discrimination statutes. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).[6] Reed has failed to put forth evidence of severe and pervasive harassment. He testified that coworkers would call him "Silent Bob," which he understood to be an insult directed at his post-traumatic stress disorder that causes him to not say much around others. (Dep. Reed [DN 68-1] at 192:2–23.) He also testified that this happened over 40 or 50 times. (*Id.* at 222:18–24.) But "name-calling, alone, is not sufficient to create a hostile work environment." *Coulson v. The Goodyear Tire & Rubber Co.*, 31 F. App'x 851, 858 (6th Cir. 2002) (use of "looney toon," "wacko," "crazy," and "Rambo" as insults did not create a hostile work environment). Because

---

[6] While this case involved federal claims under Title VII, the KCRA has been interpreted consistently with this requirement. *Strange*, 2015 WL 3463629, at *8.

12

Reed has not met his prima facie burden of demonstrating he was subject to severe and pervasive harassment, his hostile work environment claim must fail.

To the extent Count IV is a negligence claim, Reed focuses on the failure to accommodate his disability. He alleges that the defendants had a duty to provide a safe working environment, and they breached this duty by failing to accommodate his disabilities, which caused him to injure his ankle in November 2013 while weed eating in a dangerous area. An employer has the duty to furnish its employee with "a place reasonably safe having regard for the character of work and reasonably safe tools and appliances for doing the work." *Stinnett v. Buchele*, 598 S.W.2d 469, 471 (Ky. Ct. App. 1980) (quoting *Happy-Scuddy Coal Co. v. Combs*, 219 S.W.2d 968, 970 (Ky. 1949)). "The measure of duty is to exercise ordinary or reasonable care to do so. The standard is the care exercised by prudent employers in similar circumstances." *Id.* Thus, the defendants owed Reed a duty to act as a reasonably prudent employer would in assigning him work. There are unresolved factual issues as to whether the defendants breached this duty and whether any breach caused Reed's injuries, as the parties have not developed the record on the events surrounding Reed being assigned to this job. *See Lewis v. B & R Corp.*, 56 S.W.3d 432, 438 (Ky. Ct. App. 2001) ("the breach of a duty and causation are factual issues"). Therefore, the Court **DENIES** the motion for summary judgment as to Count IV.

### E. COUNT V – CIVIL CONSPIRACY

The defendants also move for summary judgment as to Count V, which alleges that the Ginn Group acted in concert with other defendants to discriminate against Reed on the basis of his disability. They argue that the claim must fail, as the complaint alleges that the defendants conspired to terminate him because of his disability. (Pl.'s Compl. [DN 1-2] ¶ 91.) The Court has already determined that Reed lacks evidence that he was actually terminated, as the

defendants were attempting to have Reed return to work as late as July 2014. As such, there is no evidence upon which a reasonable juror could conclude that the defendants conspired to terminate Reed because of his disability, and the motion for summary judgment is **GRANTED** as to Count V.

### F. COUNT VI – RETALIATION

Count VI of the complaint has been construed by the Court to be a claim under KRS § 344.280 of retaliation for requesting reasonable accommodations and opposing unlawful discrimination, as opposed to a civil conspiracy claim as it is labelled. (*See* DN 20, at 28 n. 8.) To state a prima facie case of retaliation under KRS § 344.280, a plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) the exercise of his civil rights was known by the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Brooks v. Lexington-Fayette Urban Cty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004)

Reed alleges that he engaged in a protected activity when he requested accommodations, and the defendants took adverse action against him by denying those requests and giving him "horrible jobs" instead. (Dep. Reed [DN 63-5] at 193:2–3.) GCE concedes that Reed was engaged in a protected activity and that it knew of his requests. But it argues that Reed cannot establish that he suffered any adverse employment action or that a causal connection exists between the two. Taking Reed's testimony in a light most favorable to him, he has met his burden of producing evidence that satisfies the first three elements of his prima facie case, as he testified that the defendants retaliated against him for requesting accommodations by giving him even more difficult jobs. (*Id.*) However, neither party addresses what evidence may show a causal connection between Reed's accommodation requests and his assignment to even more

strenuous jobs than those he had previously held. Reed does not indicate how temporally proximate these events were, or what specific jobs he (1) initially held, (2) requested due to his need for an accommodation, and (3) was ultimately assigned to in retaliation for his request. Based on this lack of evidence, there is nothing upon which a reasonable juror could conclude that he was given more strenuous jobs *because of* his request for accommodations. As such, Reed has not met the fourth element of his prima facie case, and the motion for summary judgment as to Count VI is **GRANTED**.

### G. COUNT VII – EEOC RETALIATION

Count VII alleges that the defendants unlawfully retaliated against Reed for filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). This retaliation claim is also asserted pursuant to KRS § 344.280, which requires Reed to establish the same prima facie case as above. GCE argues that Reed has no evidence of an adverse employment action taken against him, and the Court agrees. Reed filed his EEOC complaint in late January 2014. (DN 63-14.) At that time, Reed was on FMLA leave after injuring his ankle in November 2013. Reed alleges that the defendants then retaliated against him by failing to accommodate this injury, punishing him for the incident, and terminating him. But as previously discussed, there is no evidence that Reed was ever terminated. Likewise, the evidence indicates that the defendants were trying to accommodate Reed by contacting him to determine when he could return to work and discussing what his limitations would be and what accommodations he may need. (Emails [DN 63-15] at 1.) And while Reed states in his affidavit that he was "written up" for the incident in which he was injured, he does not explain how this was adverse to him. "An adverse employment action is a materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Talley*, 542 F.3d at 1107 (quotations

omitted). Reed does not explain what the consequences of a write up are, nor does he explain how being written up affected his employment, given that that he never returned to work following his injury. Thus, Reed's EEOC retaliation claim fails, and the motion for summary judgment is **GRANTED** as to Count VII.

### H. COUNT VIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Count VIII alleges that the defendants negligently inflicted emotional distress upon Reed when they failed to inform him of his employment status and termination. To state a claim for negligent infliction of emotional distress under Kentucky law, a plaintiff must establish the basic "elements of a common law negligence claim[.]" *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012). A plaintiff must also show "severe or serious emotional injury . . . [that] a reasonable person, normally constituted, would not be expected to endure." *Id.* at 17–18 (quotations omitted). Reed has not offered evidence of such an injury. The only evidence he points to is his testimony, in which he stated that he now mostly stays at home, surfs the internet, watches television, and avoids going out and meeting new people. (Dep. Reed [DN 67-2] at 241:3–13.) This is insufficient to demonstrate that he suffered a severe or serious emotional injury, especially since the injury must be shown by "expert medical or scientific proof." *Osborne*, 399 S.W.3d at 17. Therefore, the motion for summary judgment as to Count VIII is **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motions for summary judgment by Gulf Coast Enterprises (DN 63) and The Ginn Group, Inc. (DN 62) are **GRANTED IN PART** and **DENIED IN PART**.

cc: Counsel of Record

Joseph H. McKinley, Jr., Chief Judge
United States District Court

April 24, 2018